Catherine L. TOMAZZOLI,
Plaintiff-Appellant,

v.

Michael SHEEDY and Christian County, Illinois, Defendants-Appellees.

No. 85–2805.

United States Court of Appeals, Seventh Circuit.

Submitted May 21, 1986.*

Decided Oct. 24, 1986.

---

* This matter originally was scheduled for oral argument on May 21 but appellant moved to waive argument and the court granted her motion on May 19. Appellees responded on May 19 and their objection to waiver of argument was construed as a motion to reconsider and denied. The appeal is therefore submitted for decision on the briefs and record.

Mary Lee Leahy, Leahy & Leahy, Springfield, Ill., for plaintiff-appellant.

Val C. Simhauser Heckenkamp, Simhauser & Drake, P.C., Springfield, Ill., for defendants-appellees.

Before COFFEY, FLAUM, and RIPPLE, Circuit Judges.

PER CURIAM.

Appellant Catherine Tomazzoli settled her employment discrimination case (brought under 42 U.S.C. § 1983) against Christian County, Illinois and one of its deputy sheriffs for $5,000 on the day of trial. As part of the settlement, the parties also agreed that the district court would determine what amount of attorney's fees to award under 42 U.S.C. § 1988. The court found that Tomazzoli was "clearly the prevailing party" and awarded $60 in costs (though later increased on reconsideration to $421) and $6,000 in attorney's fees following a hearing on the matter. Dissatisfied with the fee award, Tomazzoli appealed. We affirm.

I

Tomazzoli's attorney, Mary Lee Leahy, claims that the district court erred both in setting her hourly rate at $75 and in determining that 80 hours was a reasonable number of hours for the proper presentation of the case (including the Section 1988 fee hearing). Leahy claims that $100 per hour is the reasonable rate for her services and 117.25 hours were spent to settle the case and present the fee application. In support of her claim, Leahy prepared and submitted a 5–page statement of the legal

services rendered up through the filing of her fee petition, logging the date on which the services were performed, a short explanation of what was done, and the amount of time (in ¼–hours) spent on each task or combination of tasks. The statement, along with a detailed "Resume of Education, Training and Experience," was attached to an affidavit in which Leahy attested that $100.00 per hour is a reasonable rate for [the] services rendered."

In addition to her own, Leahy filed the affidavits of two attorneys who, like Leahy, practice in the Central District of Illinois—one, Patricia Benassi, has an office in Peoria and the other, Steven Beckett, in Champaign. Leahy practices law in Springfield. Benassi states that "[a] substantial portion of [her] legal work involves civil rights cases, employment discrimination cases, and labor relations matters"; she attests that her "customary and usual fee on all civil rights cases and employment discrimination cases is $100 per hour plus expenses...." Similarly, Beckett states that he handles plaintiffs' civil rights cases "in federal district courts in Nebraska, Missouri, Wisconsin, and Illinois, and ... in the Seventh and Eighth Circuit Courts of Appeals, and the United States Supreme Court" and "believes the prevailing market rate for the State of Illinois for attorneys, in cases in the United States District Court for the Southern District of Illinois, is $100 per hour." [1]

In response, appellees' counsel, Val Simhauser, submitted the affidavit of Dwight O'Keefe, an attorney who practices in Springfield and devotes a portion of his practice to the defense of civil rights claims; O'Keefe goes on to state that he is "acquainted with the fees charged by or awarded to plaintiffs' attorneys in the U.S. District Court, Central District of Illinois, Springfield Division" and "believe[s] the prevailing rate for plaintiffs' attorneys in employment discrimination cases is $65.00 to $75.00 per hour." In addition to the O'Keefe affidavit, Simhauser (who, according to Martindale-Hubbell, was admitted to the bar in 1980) attested that he spent 83¼ hours on the case. At the fee hearing, Simhauser further stated that he billed the insurance carrier that he represented $55 per hour for his time while a partner in the firm charged $75 though he also acknowledged that partners in his firm charge as much as $100 per hour for other litigation.

Appellees' primary challenge in the district court to the fee petition was based on comparison of the requested fee with a fee award made in another civil rights case (*Kolar v. Gutschenritter*, No. 80–3064) from the Central District of Illinois that the Leahy firm handled several years earlier. In that case, the Leahy firm was awarded (on November 3, 1981) $75 per hour and "racked up 90.25 hours" which "included taking at least 12 depositions and a two-day jury trial." Appellees argued that an award of $75 per hour in November 1981 did not justify an award of $100 four years later and found it "difficult to believe that Attorney Leahy spent more time in this case than in *Kolar*," estimating that "Leahy spent no more than 50 hours" on the instant case. As such, appellees maintained that Leahy inflated her time "to an intolerable degree" and called for the complete denial of fees.

Leahy responded to the charges arguing that appellees' accusations were "totally false and misleading" and that a comparison to *Kolar* was inappropriate; she moved to strike both appellees' memorandum and the attached affidavit and filed a supporting memorandum. Claiming that it was necessary for her to respond, Leahy also moved for 6.75 hours of additional fees. Leahy's motions prompted a further response by appellees. The court immediately scheduled the matter for hearing on August 23, 1985, and directed the parties to "[b]e prepared for a full-blown discussion of cases from this Circuit dealing with the award of such fees." Neither party

---

1. Various legal directories disclose that Benassi was admitted to the bar in 1969, Beckett in 1973, and Leahy in 1966.

presented further evidence at the hearing, and the court issued its written decision on the same day.

## II

■ Tomazzoli is entitled to attorney's fees, see *Lovell v. City of Kankakee*, 783 F.2d 95, 96 (7th Cir.1986) (settlement of case prior to formal adjudication on merits not a bar to recovery of attorney's fees); the only question is the amount. The fee applicant bears the burden of documenting to the satisfaction of the district court " 'the appropriate hours expended and hourly rates.' " *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 548 & n. 8 (7th Cir.1986) (Title VII action).[2] Further, the applicant is expected to exercise "billing judgment" in calculating his or her fee; excessive, redundant or otherwise unnecessary hours are to be omitted from the fee submission, *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), and the applicant should command no more than an appropriate market rate, see *Blum v. Stenson*, 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 1547 & n. 11, 79 L.Ed.2d 891 (1984). See also *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir.1986) ("billing judgment" involves a complex array of considerations); Kritzer, et al., Understanding the Costs of Litigation: The Case of the Hourly-Fee Lawyer, 1984 Am. Bar Found. Research J. 559. The respondent then may challenge the reasonableness or accuracy of the rates or hours. See *Blum v. Stenson*, 465 U.S. at 892 n. 5, 104 S.Ct. at 1545 n. 5. " 'When ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are rea-sonable, the resulting product [rate times hours[3]] *is presumed* to be the reasonable fee' to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, —— U.S. ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (emphasis in original), quoting *Blum v. Stenson*, 465 U.S. at 897, 104 S.Ct. at 1548. This is in keeping with Congress' intent that it is "necessary to compensate lawyers for all time reasonably expended on a case" "[i]n order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances." *City of Riverside v. Rivera*, —— U.S. ——, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (footnote omitted).[4]

■ The district court's objective is to determine the market rate for the services reasonably required to produce the victory, *Kirchoff v. Flynn*, 786 F.2d at 328; if an attorney cannot expect this "opportunity wage," *i.e.*, "the compensation he could obtain by representing paying clients," courts will not be able to induce attorneys to take civil rights cases. *Id.* at 326. See also S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 5908, 5913 (Congress' intent in enacting Section 1988 was to encourage the enforcement of constitutional rights through the award of "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys.") Of course, the district court in its discretion may exclude from the time to be compensated those hours it believes are based on inaccurate or misleading records.

---

2. The standards for awarding fees under the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988, are the same in a Title VII action. *Zabkowicz v. West Bend Co.*, 789 F.2d at 549 n. 9.

3. This amount, known as the "lodestar" figure, "includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee [see *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (1974) ]...." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

4. Fee statutes, of course, were not "intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 106 S.Ct. at 3098 (explaining that it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance; "strong presumption" that lodestar figure represents a reasonable fee).

*Zabkowicz v. West Bend Co.,* 789 F.2d at 550.

■ Once established an appellate court should not disturb a district court's fee award unless the court commits an error of law in the computation or has abused its discretion in calculating the amount. *Lynch v. City of Milwaukee,* 747 F.2d 423, 426 (7th Cir.1984); see also *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* 106 S.Ct. at 3100 (Blackmun, J., concurring in part and dissenting in part) ("The proper standard of review of an attorney's fee award is abuse of discretion.") While "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939, "the method of calculating a fee award rests within [the district court's] sound discretion." *Gekas v. Attorney Registration and Disciplinary Commission,* 793 F.2d 846, 851 (7th Cir.1986) (per curiam). There is no one correct formula for determining a fee award, and therefore the district court's calculation is anything but an arithmetical exercise. *Evans v. Jeff D.,* —— U.S. ——, 106 S.Ct. 1531, 1542 & n. 26, 89 L.Ed.2d 747 (1986). Nonetheless, if the district judge wants to grant less than the requested hourly rate or cuts back the number of hours spent on the case, he must provide " 'a concise but clear explanation' " of his reasons, *Lynch v. City of Milwaukee,* 747 F.2d at 427–28, citing *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941, though the failure to do so "does not automatically mean that the district has abused its discretion...." *Id.* at 428, 103 S.Ct. at 1936 (emphasis added).

### A

Leahy billed 117.25 hours but the district court allowed only 80. In explanation of its decision to cut back the number of hours by 37.25, the court stated as follows:

The explanation of some of the time spent in this case on research is particularly vague. It is very doubtful that this plaintiff's lawyer in this case needed to do much additional legal research for decisions under 42 U.S.C. §§ [sic] 1983. Her experience as expressed on the record in this case would belie any such need. Therefore, the research time suggested is considerably more than this Court deems necessary.

The court found no fault with any other specific or categorical entry in Leahy's billing statement but generally expressed "some reservations about the total amount of time appropriate for the proper presentation and settlement of this case by plaintiff's counsel," stopping short of labeling the time billed as "grossly" inflated. This explanation is adequate.

The purpose of requiring a district court to give a clear and concise explanation of its reason for an award is to enable an appellate court to determine whether the district court considered and assessed relevant information. *See Lynch v. City of Milwaukee,* 747 F.2d at 428; cf. *Gekas v. Attorney Registration and Disciplinary Commission,* 793 F.2d at 852–53 (sole reason for reduction of requested fee incorrect). Ours is not a case where the court "eyeball[ed]" the request and cut it down by an arbitrary percentage because it seemed excessive to the court. Cf. *Heiar v. Crawford County,* 746 F.2d 1190, 1204 (7th Cir.1984). Rather, the district court took evidence and considered the nature of the case and the details of the request.

■ The court found that some of the research time billed was "particularly vague" and "considerably more" than required for the prosecution of this case based on Leahy's expertise in civil rights litigation. We agree.[5] Most entries on the fee application simply refer to "research" in contrast, for example, to the entry of

---

5. We add that the district court did not find all research unnecessary. The volume of civil rights case law is ever-increasing and requires that a lawyer conduct research to determine whether new developments in the law affect her

case in light of the issues raised. To award nothing for research time in this case, if not most civil rights cases, would be unreasonable (see *Hamilton v. Daley,* 777 F.2d 1207, 1215–16 (7th Cir.1985) (research time is "appropriate re-

November 9, 1984 which lists "Research RE: Punitive damages." Further, the total number of hours attributable to research alone is uncertain; in some instances Leahy lists "research" along with other tasks performed and gives but a single total for the combined work. The record also shows that defense counsel found it necessary to spend "much time" in research because he was admittedly far less experienced in civil rights matters than Leahy. Still, he logged just slightly more than 80 hours in the case.

In addition, Leahy approximated the time for which she sought compensation in ¼-hours. The district court acted within its discretion when it chose to cut the number of hours by a lump sum in response to appellees' claim that the time was inflated. We endorse the court's approach as a practical means of trimming fat from a fee application; it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application. Cf. *New York State Association For Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983) (percentage reduction of hours appropriate in cases with voluminous fee applications), and the cases there cited.

### B

Also, "[a] court awarding fees under § 1988 is supposed to compute the 'market rate' for the attorney's work.... [T]he rate should 'simulate the results that would obtain if the lawyer were dealing with a paying client.'" *Kirchoff v. Flynn*, 786 F.2d at 323 (citations omitted); cf. *Gekas v. Attorney Registration and Disciplinary Committee*, 793 F.2d at 852 (failure of district court to determine number of hours that were reasonably spent and market rate for the services required remand). For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm. See *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 17–18 (D.C.Cir.1984) (containing an extensive discussion on billing rate v. market rate); *Shakopee Mdewakanton Sioux Community v. City of Prior Lake*, 771 F.2d 1153, 1160 (8th Cir.1985) ("attorney's own billing rate provides a reliable indicator of the attorney's assessment of what his clients are willing or able to pay for his services"); *EEOC v. Burlington Northern Inc.*, 618 F.Supp. 1046, 1054 (N.D.Ill.1985) ("[T]he hourly rate a private attorney ordinarily charges his clients for the hours worked is generally the proper hourly market rate for his services."), citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir.1982). As one commentator has explained:

> For lawyers engaged in customary private practice, who at least in part charge their clients on an hourly basis regardless of the outcome, the marketplace has set that value. For these attorneys, the best evidence of the value of their time is the hourly rate which they most commonly charge their fee-paying clients for similar legal services. This rate reflects the training, background, experience and previously demonstrated skill of the individual attorney in relation to other lawyers in that community.

Berger, Court Awarded Attorneys Fees: What Is "Reasonable"?, 126 U.Pa.L.Rev. 281, 321 (1977). But see *Kirchoff v. Flynn*, 786 F.2d at 326 ("Hourly fees ... translate poorly to § 1988 cases, where payment is contingent on success and is delayed until after the end of the litigation."); cf. *Blum v. Stenson*, 465 U.S. at 895–96, 104 S.Ct. at 1547 n. 11 (though hourly rates of lawyers in private practice vary widely, rates charged in private representations may afford relevant comparisons).

---

gardless of the nature of the suit")), especially in light of the district court's explicit requests for trial briefs and other research. Cf. *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir.1984) (to award nothing for travel time unreasonable under the circumstances).

Nevertheless, it remains the burden of the plaintiff to establish the reasonable number of hours for the proper presentation of her case.

The billing records must be sufficiently clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary. See *Blum v. Stenson*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. The court therefore may eliminate hours that are not documented in sufficient detail.

Leahy is a private practitioner, but there is no evidence in the record as to her customary hourly rates for paying clients. The district court had evidence of hourly fees ranging from $55 to $100, and noted that "[i]t is clear that there are some disagreements evident in the record between lawyers of like experience on the reasonableness of fees in this case." Leahy's evidence targets $100 as the rate for civil rights plaintiffs' attorneys in the Central District of Illinois with experience comparable to hers. Appellees' evidence hovers in the $55 to $75 range for civil rights matters though appellees' attorneys acknowledge they charge as much as $100 per hour for other litigation matters.

In the absence of evidence that insurance carriers pay less to equally experienced defense counsel (the court plainly equated Leahy, who has 20 years of legal experience, with partners in Simhauser's firm in stating that it "has a right to consider the level of charges made by the defendants in the case"), the award of an hourly rate of $75 for Leahy's services was within the court's discretion. Contrary to Leahy's contention, comparisons with the fees charged or awarded in the Chicago legal community should be disregarded. Plaintiffs' civil rights attorneys who practice in downstate Illinois can expect smaller fees than their counterparts in Chicago; this differentiation is in line with Congress' intent that Section 1988 fee awards not produce windfalls to attorneys.

Moreover, Leahy does not claim that she alone spent time on the case. Her affidavit states that "Leahy and Leahy" rendered the legal services. However, neither the affidavit nor the billing statement mention who else worked on the case and what specific tasks they performed.

The district court further observed that "there was very little in-court time here" but refused to set different rates for in-court and out-of-court work. Cf. *Berberena v. Coler*, 753 F.2d 629, 632 (7th Cir. 1985) (imposition of rate differentials for in-court and out-of-court time discretionary). The court therefore in effect determined that $75 an hour was a reasonable hourly rate for the work that Leahy performed outside the courtroom; courtroom work in contrast usually commands a greater hourly rate. Cf. *Sanchez v. Schwartz*, 688 F.2d 503 (7th Cir.1982) (affirming a differential of $85 an hour for office time and $125 an hour for in-court time). Since Leahy's affidavits establish $100 per hour (without differentiation of in-court and out-of-court time) as the "market rate" for her services, it cannot be said that $75 per hour was not a "reasonable" fee for out-of-court time, particularly since a number of entries on the billing statement include clerical tasks (e.g., filing of court documents).

### III

In sum, the district court's decision is reasonable in light of all the evidence and does not constitute an abuse of discretion. The court arrived at its figure by granting a lower than requested hourly rate and cutting down the number of hours billed with the requisite concise but clear explanation of its reasons. The composit result of $6,000 is a reasonable fee award.

We therefore AFFIRM the decision of the district court.