**Harold E. LOMAS, Plaintiff,**

v.

**KOLB–LENA CHEESE COMPANY, A SUBSIDIARY OF KATY INDUSTRIES, INC., Defendant.**

Nos. 84 C 20146, 84 C 20365.

United States District Court, N.D. Illinois, W.D.

Sept. 12, 1989.

Michael Havrilesko, Rockford, Ill., for plaintiff.

Bernard F. Healy, Jr., Rockford, Ill., for defendant.

### ORDER

ROSZKOWSKI, Judge.

### BACKGROUND

Plaintiff filed suit in the United States District Court for the Northern District of Illinois on November 16, 1984, alleging an overtime wage claim pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Illinois Minimum Wage Law, Ill.Rev.Stat., ch. 48, ¶ 1001 *et seq.* Jurisdiction of this court is based upon 28 U.S.C. § 1331. On June 23, 1983, this court entered summary judgment in Plaintiff's favor on the question of liability for underpayment of overtime wages. Damages

were subsequently awarded by court order on August 10, 1988 for the time period beginning November 16, 1981 and ending November 16, 1984. This court also awarded Plaintiff attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and Ill.Rev.Stat. ch. 48, ¶ 1012(a). The case is now before the court on Defendant's post-trial motion to amend the judgment or, in the alternative, for a new trial in relation to the damages, attorney's fees and cost awards.

### DECISION

■ Defendant first contends that this court erred in its damages determination by awarding Plaintiff $11,231.48 as the amount of underpayment of overtime wages and $6,750.00 as the amount of unrecorded, and therefore unpaid, Sunday work. This court had an admittedly difficult time in determining the exact amount of damages due Plaintiff. In fact, the court could not decipher the time cards submitted by Defendant. Accordingly, the court ordered Defendant to interpret the time cards stating the number of hours Plaintiff worked each week, the pay Plaintiff received, the actual amount owed Plaintiff for overtime at one-and-one-half times his regular hourly rate, the difference between the amount paid and the actual amount due, and the amount of time Management deducted each week for Plaintiff's break time.

Defendant submitted to this court a summary chart purportedly interpreting Plaintiff's time cards as well as a supporting affidavit by Sue Lancaster, the account supervisor at Kolb–Lena Cheese Company. From this chart, as well as from Plaintiff's figures, the court concluded that the amount Plaintiff was underpaid for the relevant time period equalled $17,981.48. The court awarded Plaintiff damages in that amount.

The court continues to be troubled by the lack of adequate documentation regarding Plaintiff's work hours. The problems center around Plaintiff's break times and Plaintiff's Sunday work hours. In its August, 1988 order, the court found that Plaintiff was required to punch out on the time clock for noon breaks. Plaintiff failed to do this. Accordingly, Defendant deducted one hour from Plaintiff's time cards when it "was able to verify that Plaintiff had, in fact, taken a lunch break." Defendant's summary chart shows varying hours deducted from Plaintiff's time cards; hours that are apparently unverifiable by this court or anyone else. The hours deducted thus appear to be arbitrary.

Secondly, as stated in this court's August 10, 1988 order, Plaintiff's time cards reflect that he worked *most* Sundays. The court believes that not all of the Sundays Plaintiff worked are reflected on his time cards, however. This court's December 30, 1988 order states:

> No record was made of the exact number of hours Plaintiff worked on any particular Sunday or of how many Sundays Plaintiff worked in any particular year. The court does, however, believe Plaintiff's testimony that he did, in fact, work some Sundays for which he was not paid.

This court has stated before and will once again reiterate that any damage award rendered in this case will, of necessity, be estimated. This court has already spent an inordinate amount of time trying to interpret Plaintiff's time cards; an area in which the court lacks expertise and an area that should have been organized and coherently presented to the court by the parties. The court has examined Plaintiff's time cards, to the best of its ability, and has examined Defendant's summary chart as well as Plaintiff's expert's calculations. The court believes that the $11,231.48 figure representing the amount Plaintiff was underpaid in weekly wages and the $6,750.00 figure representing Plaintiff's unrecorded and unpaid Sunday work are reasonable damage figures. Resubmission of the same material does not give the court any reason to modify its previous decision. Accordingly, the court affirms its previous damages award.

Defendant's second contention is that the award of $29,164.50 in attorney's fees and $2,999.25 in costs is unreasonable. This case was originally filed as an age discrimination and retaliatory discharge claim.

The Fair Labor Standards Act (FLSA) claim was filed later. Plaintiff only prevailed on the FLSA issue. Accordingly, Plaintiff was only entitled to recover fees and costs incurred in connection with the FLSA proceedings. Plaintiff submitted a request for attorney's fees in the amount of $29,164.50 and costs in the amount of $2,999.25 on October 3, 1988. Defendant did not then object to this request. The court in its December 30, 1988 order viewed this amount to be reasonable.

The Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), provides that courts shall award reasonable attorney's fees to prevailing plaintiffs. The policy behind requiring defendants in such cases to pay plaintiffs' reasonable attorney's fees is to ensure that plaintiffs retain the full recovery which they are due. *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir.1986). Plaintiffs usually cannot monitor the amount of hours and the quality of hours their attorneys have spent in their particular cases. An incentive is thus created for attorneys to "run up hours" when working on cases where defendants may be required to pay the prevailing party's attorney's fees. *See, e.g., Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir.1986). The court is, therefore, left with the duty of monitoring the amount and quality of time an attorney puts into a case reflected by the resulting fee petition. The only guideline a court has is that the fees must be "reasonable." This is indeed a vague guideline.

In *Freeman v. Franzen*, 695 F.2d 485, 494 (1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983), the Seventh Circuit held that a district court has discretion in setting the amount of attorney's fees awarded. In so doing, a judge must use his experience in deciding whether the requested number of hours were reasonably expended. *See, e.g., Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 765 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Fee applicants bear the burden of proving to the satisfaction of the court the appropriate number of hours expended at reasonable hourly rates. In so doing, an appli-

cant is expected to exercise "billing judgment." This means that no excessive, redundant or unnecessary hours should be included in the fee petition. *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir.1986). If such hours are included in a fee petition, the district court has the power to deduct the hours from the attorney's fees requested. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

A district court in deciding fee petitions must make judgments based upon the nature of the case and the details of the petition requested. *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1204 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). The court must compensate an attorney for all hours reasonably expended. However, the court may exclude hours that are based on inaccurate or misleading records. *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir. 1986). No precise rule or formula is available to a district court in reducing fee awards. Again, discretion lies in the district court because of the court's familiarity with the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The Seventh Circuit has recognized, however, that it is unrealistic to expect a district court to evaluate and rule on every entry in an application for attorney's fees. *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (1986).

Defendant, in its post-trial motion, divided Plaintiff's time records into three categories. According to Defendant, Category I:

pertains to entries with insufficient information to determine whether the work is related to the wage claim or to determine if the expenditure of time is reasonable. Category II contains entries related to the wage claim along with entries unrelated to the wage claim ... Category III contains entries clearly related to the wage claim.

Upon examining the entries in Defendant's Category I, the court finds entries such as Attorney Havrilesko's conferences with Plaintiff, attending evidence deposi-

tions of Plaintiff, attending evidence and discovery depositions of Dorothy Demeter, Helen Lee, and Gardner Powell and drafting proposed jury instructions. While conferences with Plaintiff may not relate exclusively to the FLSA claim, such conferences are sufficiently intertwined with all claims as to be allowed as recoverable attorney's fees. The evidence and discovery depositions entered in "Category I" are clearly related to the FLSA claim. As stated by the Defendant in its post-trial motion:

> the depositions of plaintiff's expert, Gardiner Powell, and defendant's expert, Truesdale, were exclusively related to the wage claim. The deposition of Helen Lee, defendants' (sic) comptroller, substantially related to the wage claim. A small portion of Dorothy Demeter's deposition related to the wage claim.

Accordingly, the court finds the entries in Defendant's Category I to be recoverable attorney's fees.

The court also finds that the entries in Defendant's Category II are substantially related to or sufficiently intertwined with Plaintiff's FLSA claims so as to be considered "reasonable" as attorney's fees. The same holds true for the costs submitted by Plaintiff. Accordingly, the court affirms its December 30, 1988 order awarding Plaintiff $29,164.50 in attorney's fees and $2,999.25 in costs.

■ Finally, Plaintiff has moved this court for an award of prejudgment and postjudgment interest. An award of prejudgment interest lies within the discretion of the trial court in cases based upon the FLSA. *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 411 (7th Cir.1989). "The purpose of prejudgment interest is to compensate plaintiffs for the lost time value of money." *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1243 (7th Cir.1988). "Many of the appellate courts to consider the issue have held that pre-judgment interest (in FLSA cases) is mandatory ... or presumed to be appropriate." *Brock v. Richardson,* 812 F.2d 121, 126 (3rd Cir.1987). *See, also, Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1335–37 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988); *E.E.O.C. v. O'Grady,* 857 F.2d 383, 391–92 (7th Cir.1988); *Kossman v. Calumet County,* 800 F.2d 697, 702–03 (7th Cir.1986); *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987).

■ The court believes prejudgment interest is appropriate in this case. Such an award serves to compensate Plaintiff for the delay in receiving his overtime and Sunday wages during the relevant time period. According to the Seventh Circuit, in cases not dealing with written contracts or liquidated sums, it is appropriate to use the Illinois postjudgment interest rate. *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1243 (7th Cir.1988). The postjudgment interest rate is nine percent. Ill.Rev.Stat. ch. 110, ¶ 2–1303. Applying that rate to the facts of this case is difficult, however. The damages awarded here are estimated. The court has no way of knowing exactly how much Plaintiff was underpaid in overtime work or Sunday work during each year of the relevant time period. The court does not wish to burden itself or the parties with sorting back through Plaintiff's time cards and taking expert testimony to arrive at yet another estimated figure. Accordingly, the court believes it to be fair to all involved to take the total damages award of $17,981.48 (representing $11,231.48 in underpaid weekly wages and $6,750.00 in unrecorded Sunday work) and dividing the total by three (representing the three year recovery period). The result is a damage award of $5,993.83 per year on which to base prejudgment interest. Prejudgment interest on this figure at nine percent equals $539.44 per year.[1]

---

1. Plaintiff's damages award began November 16, 1981. Using the award figure of $5,993.83, Plaintiff's interest for 11/16/81 to 11/16/82 was $539.44. From 11/16/82 to 11/16/83, Plaintiff was underpaid an additional $5,993.83, making the interest during this time period $1,078.89 (i.e. on a total amount of $11,987.66).

Finally, from 11/16/83 to 11/16/84, Plaintiff's earned interest was $1,618.33. The date of judgment in this case was December 30, 1988. Accordingly, Plaintiff receives additional prejudgment interest from 11/16/84 to 12/30/88 on $17,981.48. This amounts to four years and forty-four days for a total of $6,668.42.

Postjudgment interest is governed by 28 U.S.C. § 1961. This section provides in relevant part:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court ... Such interest shall be calculated from the date of the entry of judgment, at the rate allowed by State law.

As with prejudgment interest, many circuits have found postjudgment interest awards to be mandatory in FLSA cases. *See, e.g., Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986); *Brock v. Richardson,* 812 F.2d 121 (3rd Cir.1987). The postjudgment interest rate in Illinois is, as discussed above, nine percent. Final judgment was entered in this case on December 30, 1988. Accordingly, interest is due Plaintiff on $17,981.48 from December 30, 1988 to the date the damage award is paid at a rate of nine percent.

## CONCLUSION

For the reasons set forth above, Defendant's post-trial motion to amend the judgment or, in the alternative, for a new trial in relation to damages, attorney's fees and costs awards is denied. The court awards Plaintiff prejudgment interest at the rate of 9% in the amount of $9,905.08. The court also awards postjudgment interest on $17,981.48 at the rate of nine percent from December 30, 1988 to the date the damages award is paid.

($1,618.33 per year for four years plus $4.43 per day for forty-four days). This brings the grand total of prejudgment interest to $9,905.08. The court notes that interest is computed solely on the judgment amount. The Illinois statute does not provide for interest on accrued interest. *See, Blakeslee's Storage Warehouse, Inc. v. City of Chicago,* 369 Ill. 480, 17 N.E.2d 1 (1938); *Lewis v. Stran–Steel Corp.,* 58 Ill.App.3d 280, 15 Ill.Dec. 368, 373 N.E.2d 714 (1978).