Shirley EDDLEMAN, Plaintiff–
Appellant,

v.

SWITCHCRAFT, INC., Defendant–
Appellee.

No. 91–3339.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1992.

Decided June 9, 1992.

Yolanda Haces (argued), Richard Flader, Flader & Haces, Chicago, Ill., for plaintiff-appellant.

Thomas H. Link, Schaumburg, Ill. (argued), Robert V. Nystrom, River Forest, Ill., for defendant-appellee.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Shirley Eddleman brought suit against her employer under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and, after a jury trial, was awarded $10,838 in damages. She sought costs and $21,383.10 in attorney's fees under ADEA, 29 U.S.C. § 626(b), and the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. The district court awarded her $3,312.67 in fees and $283.10 in costs. On appeal, we vacated the award of attorney's fees and remanded to the district court. *See Eddleman v. Switchcraft*, 927 F.2d 316 (7th Cir.1991). On remand, the district court recalculated the award and arrived at the figure of $3,390. The plaintiff appeals a second time. We reverse the award of attorney's fees and remand for further proceedings.

I

BACKGROUND

Ms. Eddleman sued her employer, Switchcraft, Inc., after she was fired from her job as a secretary and replaced with a twenty-two year old. In her complaint, Ms. Eddleman, who was forty-six years old when she was fired, stated that she had worked for Switchcraft for three years and had received excellent evaluations. She was discharged without prior notice that her work was unsatisfactory. In her suit for age discrimination, Ms. Eddleman sought reinstatement, back pay, compensatory damages, and punitive damages. In total, she sought approximately $70,000. A four day jury trial was held. Ms. Eddle-

man's attorney rested without introducing evidence of damages. The district court then bifurcated the proceeding and held a hearing on damages. Out of the presence of the jury, the district court stated:

> The plaintiff's lawyer was negligent, pure and simple. The plaintiff's lawyer failed to do something that an attorney should do, and that is to elicit from her client testimony with regard to damages.

The jury returned a verdict in favor of Ms. Eddleman and awarded her $14,534 in damages. This award was reduced by the amount of unemployment compensation, and Ms. Eddleman received $10,383.

Ms. Eddleman moved for attorney's fees in the amount of $21,383.10 and costs. She submitted a statement that her attorney had spent 168.8 hours on the case. Her attorney claimed an hourly rate of $125, the appropriateness of which was disputed by Switchcraft. The district court awarded $3,312.67. In contesting that award, Ms. Eddleman argued that the district court "inappropriately reduced the attorney's fees award requested because it erroneously relied on a contingency fee agreement executed by Ms. Eddleman and her attorney." *Eddleman v. Switchcraft, Inc.,* 927 F.2d 316, 319 (7th Cir.1991). *Eddleman* described the district court's procedure in determining the award:

> The record before us makes clear that the district court considered many permissible factors in deciding to adjust downward the recoverable attorney's fee. It is not clear to us, however, how the district court determined that the contingency fee arrangement was the appropriate recoverable attorney's fee. The fundamental problem is that, although *Hensley* [*v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ] "directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful claims," it appears that the district court never completed the calculation of its lodestar figure. The district court began its determination of attorney's fees by evaluating the number of hours Ms. Eddleman's attorney spent representing the plaintiff. The court examined the time spent by Ms. Eddleman's attorney "based upon the time the court believes it would take a competent lawyer to perform certain of the tasks [performed by Ms. Eddleman's counsel.]" The district court then specifically identified instances of what it considered an unreasonably high number of hours expended by plaintiff's attorney; in its calculation the district court considered the skills of Ms. Eddleman's attorney and the requisite skill to present the case.... However there is no indication that the court established the other key factor in the lodestar calculation, a reasonable hourly rate for Ms. Eddleman's attorney. While the record contains conflicting information as to a reasonable hourly rate for Ms. Eddleman's attorney, the district court order does not contain a conclusion as to a reasonable hourly rate. As a result of this omission, we are not confident that the district court established a lodestar figure.

*Id.* at 319.

We then concluded that the district court might well have considered the contingent fee agreement outcome-determinative on the amount of attorney's fees and stated:

> While it is clear the district court considered relevant factors when making a downward adjustment in Ms. Eddleman's requested attorney's fee award, it is not clear that the court employed the factors in the appropriate manner. The district court has the discretion to weigh relevant factors. However, it may not substitute these factors for the lodestar calculation.

*Id.* at 320.

The case was remanded to the district court for recalculation of the attorney's fees. On remand the district court determined that the reasonable hourly rate for services rendered in court by Ms. Eddleman's attorney was $60, and that the reasonable hourly rate for services rendered outside court was $40. The basis for these figures was the district court's determination that the attorney "was far less competent than the attorneys who are appointed

by this United States District Court under the Criminal Justice Act, 18 U.S.C. § 3006A." *Eddleman v. Switchcraft, Inc.,* No. 86 C 2215, Memorandum Opinion and Order, at 1–2, 1991 WL 206008 (N.D.Ill. Sept. 18, 1991). The district court concluded that the compensation rates set for those lawyers would be "generous but reasonable" for Ms. Eddleman's attorney. *Id.* at 2. The district court then examined the hours claimed by Ms. Eddleman's attorney for specific tasks. The district found that the attorney had engaged in "substantial 'wheel-spinning'" in her performance of out-of-court tasks and had charged for tasks "for which no single client should be charged by a competent federal court practitioner." *Id.* at 3–4. Accordingly, the district court reduced the claimed out-of-court time to 54 hours. It also found that the attorney's incompetence had caused unnecessary time to be spent in court on some of the days the case was on trial and reduced the claimed in-court time to 20.5 hours. The total awarded by the district court was $3,390.

On appeal, Ms. Eddleman's attorney contends that the district court failed to recalculate the award in accordance with our instructions. Specifically, she contends that the district court erred in deciding upon a reasonable hourly rate by comparing her competence with that of attorneys appointed under the Criminal Justice Act and that the court erred in reducing the hours claimed.

## II

### ANALYSIS

■ Because of the factual nature of attorney's fee awards, appellate review is limited to a "highly deferential abuse of discretion standard." *See Leffler v. Meer,* 936 F.2d 981, 984 (7th Cir.1991). Determining a fee award is left to the discretion of the district court in light of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

■ Nevertheless, the Supreme Court has made it clear that, in determining an attorney's fee award, certain basic principles of methodology must be followed. *See Eddleman v. Switchcraft, Inc.,* 927 F.2d 316, 318 (7th Cir.1991) (discussing cases). A district court should begin its determination by multiplying the hours reasonably expended by a reasonable hourly rate to arrive at a base figure commonly known as a "lodestar." *Id.* (citing *Blanchard v. Bergeron,* 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989); *City of Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986)). The lodestar figure may then be increased or decreased in light of factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and approved by the Supreme Court in *Riverside* and *Blanchard. See Blanchard,* 489 U.S. at 91 & n. 5, 109 S.Ct. at 943 & n. 5; *Riverside,* 477 U.S. at 568 & n. 3, 106 S.Ct. at 2691 & n. 3; *Lynch v. City of Milwaukee,* 747 F.2d 423, 427 (7th Cir.1984). However, as the Supreme Court specifically noted, many of the *Johnson* factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" and thus should not be considered a second time in modifying the lodestar amount. *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 (quoting *Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980); *see also Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984); *Lynch,* 747 F.2d at 426 n. 2).

■ The reasonable hourly rate to be used in computing the lodestar figure should be based on the appropriate market rate for the attorney's work. *Leffler v. Meer,* 936 F.2d 981, 985 (7th Cir.1991); *Tomazzoli v. Sheedy,* 804 F.2d 93, 96 (7th Cir.1986). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Henry v. Webermeier,* 738 F.2d 188, 193 (7th Cir.1984). Thus, the market rate for Ms. Eddleman's attorney would be

the rate which lawyers in the Chicago area of similar ability and experience charge in employment discrimination cases.

In the present case Ms. Eddleman's attorney claimed a rate of $125 per hour. She supported that rate by citing cases in which attorney's fees at similar hourly rates were granted. In an affidavit, she stated that she had been awarded $125 per hour in a similar case. A copy of the order making that award was attached to her affidavit; it stated that the rate, "although unsupported by documentary evidence, appear[ed] reasonable." *Ayala v. Mayfair Molded Products Corp.*, No. 84 C 5642, Order (N.D.Ill. Dec. 10, 1986). Ms. Eddleman's attorney stated in her affidavit that she normally takes employment discrimination cases on a contingent fee arrangement. Thus, the best evidence of the market rate—the hourly rate customarily charged by counsel for such services, *see Tomazzoli*, 804 F.2d at 98—is not available in the present case. *See id.* (citing *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986) ("Hourly fees ... translate poorly to § 1988 cases, where payment is contingent on success and is delayed until after the end of the litigation.")). Counsel may, however, be able to submit other evidence that will be both relevant and probative on the issue of market rate. For instance, affidavits from other counsel practicing in the same market, about what they charge paying clients for similar work would be helpful.

█ The fee applicant "bears the burden of documenting to the satisfaction of the district court ... 'the hourly rates.'" *Tomazzoli*, 804 F.2d at 96 (quoting *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 548 & n. 8 (7th Cir.1986)). Here, however, the district court has not discussed whether Ms. Eddleman's attorney has documented her hourly rate to its satisfaction. It determined not the market rate for her services, but the value in the eyes of the court of the particular services she rendered in this case. It arrived at a "market rate" based on the statutory compensation afforded to attorneys appointed by the court under the Criminal Justice Act. That statutory compensation cannot be said to be the market rate even of most attorneys appointed under the Criminal Justice Act. More importantly, it is not the market rate of attorneys with private clients rendering professional services in employment discrimination cases. The market rate set by the district court was arbitrary and was, therefore, an abuse of discretion.

Finally, we note that in setting the market rate, the district court apparently was seeking to take into account the level of competence of Ms. Eddleman's attorney. It is appropriate for a district court to make such a downward adjustment in an appropriate case as long as it recognizes that such a factor might be subsumed within the basic loadstar calculation. *See Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. A less competent attorney may have to charge a lower rate because of a general reputation for inferior proficiency in basic lawyering skills or inexperience that reflects itself in matters of judgment. On the other hand, incompetence in the particular matter at hand will not be reflected in the hourly market rate. If "wheel-spinning" is the result of chronic inefficiency, the court should take care not to account for that incompetence a second time in reducing the hourly rate.[1] *See Copeland*

---

1. The district court reduced the hours requested for some tasks because it believed the hours requested reflected "wheel-spinning" by the attorney. The district court was skeptical of the hours claimed for other tasks and reduced them. In other instances the district court cited billing judgment or time wasted in court to repair mistakes of the attorney. The district court, by virtue of its familiarity with the litigation, is in a better position than this court to determine the hours reasonably expended. *See Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir.1991); *Ustrak v. Fairman*, 851 F.2d 983 (7th Cir.1988). We review its determination with great deference; however, as in the case of the hourly rate, if the number of hours requested is reduced, the district court should provide a "concise but clear explanation." *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986). In the present case, the district court has provided an adequate explanation, and we cannot say that the reduction of hours was unreasonable. This is "not a case where the court 'eyeball[ed]' the request and cut it down by an arbitrary percentage because it seemed excessive to the court." *Id.* The district court did not abuse its discre-

*v. Marshall,* 641 F.2d 880, 890 (D.C.Cir. 1980) (cautioning against redundant application of overlapping *Johnson* factors).

## Conclusion

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

Robert C. Meltzer, Katz, Randall & Weinberg, Chicago, Ill., for petitioner.

William J. Howard, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, D.C., A.D. Moyer, I.N.S., Chicago, Ill., for respondent.

tion in determining hours reasonably expended. *See Leffler v. Meer,* 936 F.2d 981, 985 (7th Cir.

