59 F.3d 642
 101 Ed. Law Rep. 630
 Geraldine SPELLAN and John Spellan, Plaintiffs-Appellants,
v.
BOARD OF EDUCATION FOR DISTRICT 111, Thomas J. Clemente, in
his official and individual capacity, William J.
Schlosser, et al., Defendants-Appellees.
 No. 94-3575.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 8, 1995.
Decided June 30, 1995.
 
 Mary D. Cahill, Susan Einspar-Wayne (argued), Hinsdale, IL, Bonnie L. Beck-Fries, Summit, IL, for plaintiffs-appellants.
 Robert H. Ellch, Joanne W. Schochat, Scariano, Kula, Ellch & Himes, Chicago, IL, Jon G. Crawford (argued), Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for defendants-appellees.
 Before CUMMINGS, ESCHBACH and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants' counsel appeals the district court's award of fees. The district court granted approximately half of the fees counsel requested. For the reasons stated below, we vacate the judgment of the district court and remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 
 3
 Geraldine and John Spellan brought an action against the Board of Education for School District 111 in Burbank, Illinois, individual members of the Board, and other District 111 officials. In a three-count complaint, they alleged that they had been denied access to District 111 Board of Education meetings. They also alleged that they were denied access to school activities. These claims were brought under the First Amendment and the Illinois Open Meetings Act.
 
 
 4
 This action was originally brought as a class action. In April 1992, a class was certified. After discovery, however, the School Board moved for summary judgment. The plaintiffs failed to respond, and consequently the summary judgment motion was considered on the defendants' brief alone and was granted in September 1992. The class was decertified, as well, because the district court determined that it was not adequately represented.
 
 
 5
 The plaintiffs then moved to vacate the judgment; they also sought to file an answer and their own summary judgment motion. In August 1993, the prior judgment was vacated, plaintiffs' summary judgment motion was denied, and defendants' summary judgment was partly granted. Consequently, Count III, involving the access to school activities claim, was dismissed, as were all the claims based on state law, and all the claims against one individual defendant, Anthony Scariano. Plaintiffs moved for reconsideration of the dismissal of the state law claims, but that motion was never considered by the court on the merits because settlement discussions began shortly after the motion was filed.
 
 
 6
 The case was dismissed in October 1993 as settled. The plaintiffs received a $27,000 settlement and the agreement of the Board that they would enjoy the same access to the school district's premises as other parents and that they could participate in the meetings of the Board without regard to the content of their viewpoint, but subject to reasonable time, place, and manner restrictions.[1]
 
 
 7
 The district court then addressed the matter of attorneys' fees. It held that the plaintiffs substantially prevailed within the meaning of 42 U.S.C. Sec. 1988.[2] The defendants argued that the plaintiffs did not prevail under Sec. 1988 because relief was based solely on state law claims. In the alternative, the defendants objected to the amount of the fees and to the hourly rate at which the fees were calculated. The district court held, however, that relief was based on plaintiffs' federal claims, and that the plaintiffs did prevail.[3] The court also stated that the defendants' objections were presented inadequately because they lacked specificity and substantive supporting documentation, despite the court's admonition to provide otherwise.[4] Upon its own examination of the fee request, however, the district court determined that the fees requested were excessive. The court found that the plaintiffs had devoted themselves to unsuccessful pursuits and that there had been duplication of effort as well as other excessive billings. Accordingly, the court determined that it ought to reduce the fees below those requested. Nevertheless, given the deficient presentation of objections by the defendants, the court held that, in making its own evaluation, all doubts would be resolved in favor of the plaintiffs.
 
 
 8
 In evaluating the requested fees, the district court held that the hourly rate of the plaintiffs was acceptable. However, the court eliminated the time billed on the class certification, and on a preliminary injunction motion that was withdrawn. Further, the court held that it would not compensate the plaintiffs' attorneys for time expended to vacate the summary judgment decision to which they originally failed to respond. The court also stated that the many inter-office conferences constituted duplicative effort, and therefore it reduced the hours billed to one-quarter of the requested number. The court then turned to the hours that had been spent on summary judgment motions and held that the number of hours spent was unnecessary and excessive. Thus, the court reduced the time billed on the summary judgment motions by seventy percent. The court also awarded $4,000 of the $12,323.50 requested for work done on the fee petition on the ground that the request was excessive. Finally, the court stated that "the hours in general appear excessive," and reduced the "remaining hours" by another twenty percent. R.116 at 10.
 
 
 9
 Overall, $101,291.25 was awarded to the plaintiffs' attorneys, an amount approximately $95,000 less than requested. (The plaintiffs' attorneys had requested $183,295.25 in their "Fee Reply Memorandum," and $12,323.50 for their fee petition.)
 
 II
 DISCUSSION
 
 10
 In reviewing the district court's determination of attorneys' fee awards, our standard is a "highly deferential abuse of discretion standard." Estate of Borst v. O'Brien, 979 F.2d 511, 514 (7th Cir.1992); see Ustrak v. Fairman, 851 F.2d 983, 987 (7th Cir.1988). The district court is accorded significant deference in fee matters because: (1) it possesses "superior understanding of the litigation and [there exists a] desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding "a second major litigation" strictly over attorneys' fees is high. Id. An award under Sec. 1988 is to be "based on the totality of the case in light of the purpose of the act: to permit and encourage plaintiffs to enforce their civil rights." Lynch v. Milwaukee, 747 F.2d 423, 426 (7th Cir.1984) (citations and quotations omitted).
 
 
 11
 The district court concluded that the plaintiffs were a prevailing party under the language of Sec. 1988. Thus, the attorneys were entitled to fees. The only consideration after such an entitlement is established is the reasonableness of the fees. See Alexander v. Gerhardt Enters., Inc., 40 F.3d 187, 194 (7th Cir.1994). Reasonableness is determined by a number of considerations. In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court set forth the methodology and the considerations that affect the determination of Sec. 1988 attorneys' fee awards. These principles are well established in our jurisprudence, and we set them forth here in abbreviated fashion. Initially, the court must determine the "lodestar" amount by multiplying the reasonable number of hours expended by a reasonable hourly rate. This "lodestar" amount may be reduced or augmented on the basis of the following twelve factors: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Id. at 430 n. 3, 103 S.Ct. at n. 3 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)). District courts may not reduce or augment the lodestar amount arbitrarily, and consequently, we have required a "concise but clear explanation" to accompany any modification of the submitted lodestar. Estate of Borst, 979 F.2d at 515-16.
 
 
 12
 A plaintiff should not be compensated for work performed on unsuccessful claims that are not legally or factually related to the prevailing claim. Id. at 516. Rather "[a] trial court should give its best estimate in light of its experience with the case." Id. The district court's objective is to determine the market rate for the services reasonably required to produce a victory. Tomazzoli v. Sheedy, 804 F.2d 93, 96 (7th Cir.1986). This objective is consistent with the Congress' intent in enacting Sec. 1988--to encourage the enforcement of constitutional rights through the award of "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913. A district court, in analyzing a fee request in a case that has settled or continued to full litigation, must carefully scrutinize "the degree of success obtained" by counsel. Hensley, 461 U.S. at 436, 103 S.Ct. at 1941; see Estate of Borst, 979 F.2d at 516 (considering a fee request in case in which jury awarded "small percentage" of relief requested); Illinois Welfare Rights Org. v. Miller, 723 F.2d 564, 566 (7th Cir.1983) (considering fee petition in case in which parties entered into a stipulation agreement before trial).
 
 
 13
 Under the Hensley paradigm, the court must consider whether the plaintiffs have asserted any unsuccessful claims that are "distinctly different" from the claims on which the plaintiffs prevailed. Illinois Welfare Rights Org., 723 F.2d at 566. Any distinctly different claims, whether factual or legal, should necessarily be excluded from the fee calculations. However, with unsuccessful but related claims--that is, claims related to prevailing claims by a "common core of facts" or based on "related legal theories"--the court must undertake another analysis, and concentrate on overall results obtained. "If the plaintiff has achieved only partial success ... compensating the plaintiff for all hours expended on the litigation may be excessive. In such a situation, the court may adjust the award either by identifying specific hours that should be eliminated or by simply reducing the overall award to reflect the plaintiff's limited success." Illinois Welfare Rights Org., 723 F.2d at 567; see Hensley, 461 U.S. at 438-40 & nn. 13-14, 103 S.Ct. at 1942-43 & nn. 13-14.
 
 
 14
 In this case, the court specifically reduced various categories of billed hours by specific amounts and, with such a reduction, included a concise explanation of its rationale. With one exception noted below, these explanations clearly met the purpose of the requirement for such explanations: to enable an appellate court to determine whether the district court considered and analyzed all the relevant information. Tomazzoli, 804 F.2d at 97; see Lynch v. Milwaukee, 747 F.2d at 428. We do, however, have another concern with the decision of the district court that requires that it revisit this matter. We believe that, because the reductions in question are the product of independent judicial scrutiny of the record, the district court must afford the plaintiffs an adequate opportunity to respond to the district court's critique of the submitted petition.
 
 
 15
 The party submitting the petition has, of course, the burden of justifying the fees requested in the petition. Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. We have no doubt that the district court has an independent obligation to scrutinize the legitimacy of such a submission. See Hutchison v. Amateur Elec. Supply, Inc., 42 F.3d 1037, 1048 (7th Cir.1994) (recognizing, in a case where the court sua sponte reduced the attorneys' fee request, that the district court has discretion to reduce the amount of the fee request, and stating "[w]hen ... defense counsel fails to do so, the district court should not reward the defendants by denying the plaintiff's counsel an opportunity to defend his claim against specific challenges, whatever their source."). Indeed, the district court's willingness to take on that task in this case is commendable. Nevertheless, if such an independent investigation leads the district court to question certain aspects of the petition that have not been questioned previously by the opposing party, the party submitting the petition ought to have the opportunity to address the concerns of the district court before a final ruling is made on the matter. See id. It appears from our examination of the record that the plaintiffs were not afforded an opportunity to address the concerns of the district court before its ruling. We are especially concerned with the district court's across-the-board reduction of the "remaining fees" by twenty percent.[5] We believe that the plaintiffs should have had an opportunity to address the district court's concerns with respect to the excessive nature of these claims. The court's lack of specificity in this regard gave the plaintiffs little opportunity to frame a focused request for rehearing, and the same lack of specificity impedes our own review in this court.
 
 
 16
 Should this matter ever return to us, the record ought to assure us that the district court did not "eyeball" the fee request and "cut it down by an arbitrary percentage because it seemed excessive to the court." Tomazzoli, 804 F.2d at 97. It is, of course, especially important that, in ordering an across-the-board reduction, the district court not engage in double-counting. The Supreme Court noted in Hensley that many of the twelve factors considered when contemplating the award of attorneys' fees "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," and thus should not be considered a second time when modifying the lodestar amount. 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9; Eddleman v. Switchcraft, Inc., 965 F.2d 422, 424 (7th Cir.1992). On the record before us, we cannot tell whether such double-counting took place. The word "remaining" is susceptible, in the context in which it appears in the district court's opinion, to several meanings. In dealing with the objections of the plaintiffs to the proposed reductions, the district court ought also to address with more specificity this general reduction.
 
 
 17
 We address the matters raised in this case with some caution. Hensley makes clear that a fee petition ought not be the occasion for a trial within a trial. 461 U.S. at 437, 103 S.Ct. at 1941. Our cases have reiterated that concern. See, e.g., Estate of Borst, 979 F.2d at 514 (citing Nanetti v. University of Ill. at Chicago, 944 F.2d 1416, 1417 (7th Cir.1991)). We have no desire to signal a retreat from that concern. We are confident that our colleagues on the district bench will be able to afford the parties an opportunity to be heard without endangering the countervailing concern for efficiency and ease of judicial administration.
 
 Conclusion
 
 18
 For the foregoing reasons, we vacate the judgment and remand the case for proceedings consistent with this opinion. We express no view on the amount of fees to be awarded. This matter is, of course, within the sound discretion of the district court. The appellants may recover their costs in this court.
 
 
 19
 VACATED AND REMANDED.
 
 
 
 [1]
 The Settlement Agreement and Unconditional and General Release provided in relevant part:
 PAYMENT OF SETTLEMENT. Within 45 days of the dismissal of the lawsuit referred to herein, after execution of this Agreement and conditioned upon the faithful performance of all conditions required herein, the BOARD shall pay to THE SPELLANS, the sum of TWENTY SEVEN THOUSAND DOLLARS ($27,000.00). This sum has been determined as a result of arms' length agreement and negotiations between the PARTIES for compensatory damages. This sum shall not be regarded as payment for any penalty, or punitive damages, or for attorneys fees and costs.
 THE SPELLANS agree:
 (a) That the case pending before the United States District Court, Spellan v. Board of Education for District 111, et al., hereinbefore more particularly described, shall be immediately dismissed with prejudice, with the express provision that costs and attorneys' fees will be determined as issues separate and apart from the settlement of this case on the merits that the settlement of the case on the merits is not contingent on resolving attorneys fees and costs and that the court shall retain jurisdiction of this matter for purposes of enforcing the provisions of this agreement. THE PARTIES ACKNOWLEDGE AND AGREE THAT NO TERM OF THIS AGREEMENT SHALL BE BINDING UPON THE PARTIES UNLESS AND UNTIL SAID DISMISSAL IS ORDERED, AND BECOMES FINAL.
 AND the BOARD agrees:
 (a) That the SPELLANS shall be permitted to come onto School District premises upon the same conditions imposed upon other parents of the district students.
 (b) That the Board and Administrators shall at all times comply with the requirements of the Open Meetings Act (Ill.Rev.Stat. ch. 102, par. 41 et seq.).
 (c) That members of the public shall be permitted to make statements during the public participation segment of School Board meetings, subject to reasonable time, place and manner restrictions but without any restriction as to viewpoints expressed.
 R. 133 at 3.
 
 
 [2]
 42 U.S.C. Sec. 1988(b) provides:
 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. Sec. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. Sec. 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. Sec. 2000d et seq.], or section 13981 of this title,, (sic) the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [3]
 The district court also noted that, even if plaintiffs' relief was based entirely on state law claims, which it was not, the award of attorneys' fees would still be appropriate under the dictates of the Illinois Open Meetings Act, 5 ILCS 120/3(d). R. 116 at 5
 
 
 [4]
 We note that, before they submitted their objections, the district court specifically warned the defendants that objections to the fee petition had to be specific
 
 
 [5]
 The district court stated:
 Last, the hours in general appear excessive. There are numerous telephone calls, all rounded off (presumably up) to the nearest tenth of an hour. There is much review and rereview of materials. Numerous discussions and rediscussions regarding settlement. The remaining hours of Einspar-Wayne and Cahill will be reduced by 20 percent.
 The amounts claimed for costs will be awarded in full. Einspar-Wayne's hours are 540.9 less 17.2, 7.7, 17, 35.7, and 125.86 for a subtotal of 337.44 hours; reduced by 20% ...
 R. 116 at 9-10.