In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2955

THOMAS FRIZZELL,

*Plaintiff-Appellant,*

*v.*

CARL SZABO and
SANGAMON COUNTY SHERIFF'S OFFICE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:08-cv-03147—**Michael P. McCuskey**, *Chief Judge.*

ARGUED APRIL 12, 2011—DECIDED JULY 27, 2011

Before KANNE and EVANS, *Circuit Judges*, and CLEVERT, *District Judge.**

EVANS, *Circuit Judge.* This appeal arises from Thomas Frizzell's excessive force and false arrest suit against

---

* The Honorable Charles N. Clevert, Jr., United States District Court for the Eastern District of Wisconsin, sitting by designation.

former Sangamon County, Illinois, deputy Carl Szabo. Although a jury found for Frizzell on the excessive force claim, it awarded only nominal damages. Frizzell now appeals the damage award and the subsequent denial of his motion for attorney's fees. We start with the facts.

The arrest in this case stems from what should have been a routine traffic stop in Springfield, Illinois, in November 2006. Szabo was on duty in his cruiser, parked in a gas station lot, looking to ticket drivers who weren't wearing their seatbelts. Around 5:45 p.m. Frizzell drove by on his way to work at a nearby Lowe's Home Improvement store. Szabo saw that Frizzell wasn't wearing his seatbelt and pulled in behind him, but didn't activate the cruiser's emergency lights. At this point Frizzell led Szabo along an indirect route to the Lowe's store. By the time they arrived at Lowe's it was 5:57 p.m. or so, and Frizzell, who was due at work at 6:00 p.m., sped into the parking lot. Szabo pulled in behind him and activated his emergency lights.

At this point, the testimony of the two men diverges. Szabo claims that Frizzell got out of his car and ignored a command to get back in the vehicle after being told that he was stopped for a seatbelt violation. Instead, Frizzell responded that he was late for work and didn't have time for this. He continued to jog across the parking lot toward the Lowe's. In contrast, Frizzell says he didn't see Szabo until he got out of his car, at which point he saw flashing lights and heard a lot of screaming, but didn't realize it was directed at him because he had

done nothing wrong (Frizzell claimed throughout trial that he was wearing his seatbelt). Unable to make out what the deputy was saying because of the distance between them, and assuming it wasn't directed at him, he continued to hurry toward the store because he didn't want to be late for work. In a somewhat contradictory statement, Frizzell also claimed that after exiting his car he heard the deputy calling in via radio a "suspicious black" male in the Lowe's parking lot (this despite not being able to hear what the deputy was screaming), and, knowing he'd done nothing wrong but fearing police harassment, decided to jog toward the store.

Both parties agree that Szabo then drove his squad car between Frizzell and the store, cutting off Frizzell's route. Szabo claims he told Frizzell to stop and that he was under arrest. Frizzell claims it was at this point that he finally realized Szabo wanted to speak with him. He told Szabo he was going to go clock in and would come back out to speak with him. Frizzell then headed toward the exit doors to the store and began prying them open. According to Frizzell, he usually entered the store this way because the exit doors were closer to the time clock where he punched in to start his work shift. Szabo followed Frizzell toward the doors and grabbed his wrist from behind. Frizzell broke free because, he says, he didn't know who was grabbing him.

Here the stories diverge further. Szabo testified he told Frizzell again to stop, that he was under arrest and, "if you don't stop I'll taser you," but Frizzell ignored him and continued trying to pry open the doors. Frizzell

testified Szabo pointed a gun at him and said, "stop, or I'll shoot," and asked Frizzell why he had run. Frizzell responded that he was going to go inside and get the store manager to verify that he worked there, then turned away from Szabo and continued inside. Three eyewitnesses all testified that Szabo told Frizzell to stop as he was trying to get in the exit doors.

Both parties agree that Frizzell continued entering the store, and at this point Szabo, who is a foot shorter, 75 pounds lighter, and 25 years older than Frizzell, hit him with a taser, a device designed to immobilize a suspect. Szabo testified that he was concerned because Frizzell had overreacted to a routine traffic stop, ignored repeated orders to stop, and was running, without explanation, toward a populated store. At this point, and in light of the size difference between the two men, Szabo felt the best way to stop Frizzell was to hit him with a shot from his taser. After the first jolt, Szabo thought that the taser was not working correctly, and so he proceeded to tase Frizzell four more times because Frizzell kept ignoring orders to stay down. After the fifth attempt, he pepper-sprayed Frizzell and subdued him. The taser's internal log verified that it was activated five times, with breaks of a few seconds between activations, and that it was manually shut off before the fifth activation had finished. Two witnesses testified that after hitting the floor, Frizzell continued to try to move toward the doors to the store.

In contrast, Frizzell testified that he stayed down and ignored an order from Szabo to roll onto his stomach

because he was unable to move. Frizzell claimed that while he continued to lie on the ground, unable to move, he was tased continuously, probably 6 or 7 times. He also claims Szabo jumped or knelt on his chest, knocking the air out of him, and that after he was handcuffed Szabo doused him with pepper spray.

Frizzell was fired from his job at Lowe's as a result of this incident. He testified that he felt tired and like he was going to pass out for approximately two weeks following the incident. Because he did not have medical insurance, however, he didn't seek treatment for his problems. Charges against Frizzell relating to this incident were eventually dropped, and Frizzell then sued Szabo for excessive force and false arrest under 42 U.S.C. §§ 1983 and 1988. Szabo counter-sued for battery, seeking $75,000.

At the close of trial, the district judge held an instruction conference. Szabo proposed a nominal damages jury instruction, and Frizzell objected. The judge declined to give the nominal damages instruction and instead gave Frizzell's proposed damages instruction to the jury. During deliberations, the jury sent a note asking, "Do we have to award any money if we find in favor of the Plaintiff?" Over the objection of both parties, the judge responded with the following nominal damages instruction:

> If you find in favor of Plaintiff but you find that the Plaintiff has failed to prove compensatory damages, you must return a verdict for Plaintiff in the amount of one dollar ($1.00).

If you find in favor of Plaintiff and also find that Plaintiff has proven compensatory damages, you must return a verdict for Plaintiff in the amount that fairly compensates Plaintiff for the injury he has sustained.

The jury subsequently returned a mixed verdict, finding against Szabo on his battery claim, against Frizzell on his false arrest claim, and for Frizzell on his excessive force claim, but granting only nominal damages. Frizzell moved to alter or amend the damage award or for a new trial on damages, and the district judge denied this motion. The judge also denied Frizzell's motion for attorney's fees, citing the *de minimis* nature of the damages. Frizzell now claims the judge erred in giving the nominal damages instruction to the jury, and in denying his motion to amend the judgment or for a new trial, and in denying his motion for attorney's fees. We review the decisions of the trial judge for abuse of discretion.

Frizzell argues that giving the nominal damages instruction was inappropriate in this excessive force case because "pain, not injury, is the barometer by which we measure claims of excessive force . . . and one need not have personally endured a taser jolt to know the pain that must accompany it." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (internal citations omitted). He argues that even if the loss of his job wasn't considered injury, and even if he had no medical evidence of post-incident treatment for physical injuries, the mere facts that he was tasered five times and that the jury found Szabo employed excessive force should have been enough to take nominal damages off the table.

In *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996), we recognized three situations where nominal damages might be appropriate to remedy an excessive force violation: (1) where an arresting officer uses both justifiable and excessive force, but any injury results from the use of justifiable force, (2) where a jury reasonably concludes that evidence of plaintiff's injury is not credible, or (3) where a plaintiff's injuries are insufficient to justify with reasonable certainty a more substantial measure of damages. Both (1) and (3) are implicated in this case.

Throughout the trial, Frizzell focused on the pain caused by the tasering, but, as the district judge rightly identified, the *tasering* was not necessarily the basis for the jury's finding of excessive force. It is possible the jury felt Szabo was justified in his use of the taser, but that the use of pepper spray or jumping on Frizzell's chest was excessive in light of the tasering. After all, Szabo was faced with a suspect who appeared to be fleeing from a minor traffic violation, had ignored a lit-up cruiser and multiple requests to stop, was heading toward a busy public place, was much larger than he, and had refused to stay down as ordered. Given this situation, the jury could have reasonably concluded that using the taser multiple times was not excessive, but that Szabo's actions after using it were.

Given the lack of focus throughout the trial on anything other than the pain and negative aftereffects caused by the tasering, the jury might have believed that Szabo's use of pepper spray or jumping on Frizzell's chest after he

was down was excessive, but that these applications of force caused little or no quantifiable injury or pain. If so, nominal damages would be appropriate under situations (1) and (3) of the *Briggs* rationale, and the jury instruction was a correct statement of law.

Similarly, because nominal damages were, under one view of evidence, appropriate, Frizzell's claim that the judge should have granted his motion to alter the judgment or order a new trial fails. Under Rule 59(a) of the Federal Rules of Civil Procedure, the district judge must determine if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir. 1993). Frizzell once again argues that because tasering is so painful, nominal damages are clearly insufficient here, and the damages must be reconsidered. However, we will uphold a jury's verdict as long as there is a reasonable basis in the record to support it, and, as we have explained, the jury could reasonably have believed that the tasering was justifiable.

Finally, Frizzell claims that even if the nominal damage award is upheld, it is more than a *de minimis* victory, and the district judge should have awarded attorney's fees. As the judge correctly observed,

> An award of attorney fees, however, is not automatic to every prevailing party. Frizzell must have achieved enough success to be entitled to an award of attorney fees. To determine whether Frizzell achieved enough success, the Court considers: (1) the

difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation. . . . The difference between the judgment recovered and the recovery sought is the most important of the three factors. The significance of the legal issue on which the plaintiff prevailed is the least important. . . . In this case, the factors weigh against an award of fees.

The difference between the amount Frizzell sought and the $1.00 awarded by the jury is significant. Although Frizzell did not mention a specific number for the jury at trial (this may have been a mistake), his complaint alleged claims for false arrest and use of excessive force, and asked for compensatory damages in excess of $50,000 and punitive damages in excess of $30,000 on each claim. That's a total of $160,000. But Frizzell argues that because the complaint was never admitted into evidence at trial, these numbers are irrelevant. Frizzell cites no case law to support this, nor does he make any argument as to why admission into evidence of the sums sought in his complaint are important. However, even using his suggested benchmark of admitted evidence, Frizzell would lose on this factor; at trial Frizzell referenced Szabo's $75,000 counter-claim as a jumping-off point for the jury to consider in assessing damages to be awarded to him. The difference between any number in the ballpark of $75,000 and the $1.00 awarded is still too large to allow him to prevail on this argument.

In weighing the next factor, the significance of the legal issue on which Frizzell prevailed, the district judge correctly considered the extent to which Frizzell prevailed on his theory of liability. *Maul v. Constan*, 23 F.3d 143, 145-46 (7th Cir. 1994). Frizzell lost on his false arrest theory, and, considering the award of nominal damages, had only negligible success on his excessive force theory. Clearly, the jury rejected Frizzell's entire theory pertaining to false arrest and found that Szabo had probable cause—not surprising considering the circumstances surrounding what should have been a simple traffic ticket and Frizzell's refusal to stop and listen to Szabo. The jury further rejected the idea that Szabo employed excessive force warranting compensation, and so awarded only nominal damages on the excessive force claim. As the district judge found, "Frizzell, therefore, prevailed only marginally on his theory of recovery. Such a marginal victory does not support an award of fees in light of the other factors."

As for the final factor, the public purpose served by the suit, Frizzell argues that it "vindicated the fundamental rights of all residents [of Sangamon County], pursuant to the 4th Amendment, that they must not be subjected to excessive force of the Taser and pepper spray when such force is not reasonable." But as the district judge correctly noted, § 1983 cases always seek to vindicate rights. This prong more accurately addresses whether "the relief sought evince[s] a public purpose rather than merely attempt[s] to redress a private injury. . . . [and whether] victory entails something more than merely a determination that a constitu-

tional guarantee was infringed." *Maul*, 23 F.3d at 146. Frizzell made no allegation that the excessive use of tasers in connection with traffic stops was the general practice in Sangamon County. In fact, the record is quiet on this point. Common sense cautions that *excessive* tasering is to be avoided. Here, the jury most likely concluded that the tasering was not excessive. What happened after the last zap might have been excessive, but Frizzell's suit did nothing more than try to apply a common sense rule to an isolated incident in an attempt to redress his private injury. None of the prongs of this test support an award of attorney's fees, and the district judge did not abuse his[1] discretion in denying them.

For these reasons, the findings of the district court are AFFIRMED.

---

[1] Former District Judge Jeanne E. Scott presided over the trial. Chief District Judge Michael P. McCuskey presided over the post-verdict events.