Amy J. WALTERS, Plaintiff,

v.

MAYO CLINIC HEALTH SYSTEM— EAU CLAIRE HOSPITAL, INC., Defendant.

No. 12–cv–804–wmc.

United States District Court, W.D. Wisconsin.

Signed March 4, 2015.

Filed March 5, 2015.

See also 998 F.Supp.2d 750.

**1076**

Peter M. Reinhardt, Bakke Norman, S.C., Menomonie, WI, Carol N. Skinner, Skinner and Associates, Hudson, WI, for Plaintiff.

Michael J. Modl, Axley Brynelson, LLP, Madison, WI, for Defendant.

OPINION AND ORDER

WILLIAM M. CONLEY, District Judge.

The court entered judgment in this action in favor of plaintiff Amy J. Walters in the amount of $543,841.20. (Am. Judgment (dkt. #229).) Before the court is defendant Mayo Clinic Health System—Eau Claire Hospital, Inc.'s motion to alter or amend the judgment or for a new trial pursuant to Federal Rule of Civil Procedure 59. (Dkt. #240.) Finding no manifest error of law or new evidence, nor any other basis for ordering a new trial, the court will deny defendant's motion.

Also before the court is plaintiff's petitions for attorneys' fees and costs pursuant to 29 U.S.C. § 2617(a)(3) and Federal Rule of Civil Procedure 54(d). (Dkt. ##233, 238.) For the reasons that follow, the court will grant in part and deny in part plaintiff's petition, awarding plaintiff $375,466.66 in attorneys' fees and $18,048.06 in costs pursuant to 29 U.S.C. § 2617(a)(3), plus an additional $19,184.68 in costs pursuant to Federal Rule of Civil Procedure 54(d).

Finally, the court takes up plaintiff's recently-filed motion to set aside stipulation and grant alternative equitable relief. (Dkt. #261.) For the reasons that follow, the court will deny that motion as well, finding no extraordinary circumstances to reopen and modify the judgment entered in this case.

OPINION

## I. Defendant's Motions

As described below, defendant raises four bases for relief under Rule 59(e). In

the alternative, Mayo–Eau Claire seeks a new trial pursuant to Rule 59(a) based on the court's decision to include a notice instruction as part of the interference claim. After setting out the standard of review, the court considers each of defendant's multiple challenges in turn.

### A. Standard of Review

■ Defendant seeks an order altering or amending the judgment under Federal Rule of Civil Procedure 59(e). A court may grant a Rule 59(e) motion "if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir.2012) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir.1996)). "This rule 'enables the court to correct its own errors and thus avoid unnecessary appellate procedures.' " *Miller*, 683 F.3d at 813 (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996)).

■ Rule 59(e) provides a relatively narrow basis for relief, and does not reach arguments that seek to "relitigate old matters." *See, e.g., County Materials Corp. v. Allan Block Corp.*, 436 F.Supp.2d 997, 999–1000 (W.D.Wis.2006) (citing *Diebitz v. Arreola*, 834 F.Supp. 298, 302 (E.D.Wis. 1993)). Nor may a Rule 59(e) motion be "used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *See, e.g., Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir.2007) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)).

■ In the alternative, Mayo Eau–Claire seeks a new trial under Federal Rule of Civil Procedure 59(a), allowing a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R.Civ.P. 59(a)(1). Under Rule 59(a), "the district judge must determine if 'the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party.' " *Frizzell v. Szabo*, 647 F.3d 698, 702 (7th Cir.2011) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 516 (7th Cir.1993)). Defendant specifically relies on Rule 59(a) here to raise a challenge to the court's jury instructions. *See* 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2805 at pp. 68–69 (2012) ("[T]he motion also may raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions.").

### B. Defendant's Rule 59(c) Motion to Alter Judgment

■ *First*, defendant argues that "as a matter of law," Walters could not prove an interference claim because (1) "Mayo–Eau Claire granted her all the leave she requested," (2) restored her to the same position upon returning from FLA leave, and (3) "there was a significant (6 month) time gap between when she first requested leave and when she was terminated." (Def.'s Br. (dkt. # 241) 2.) This argument wholly fails to acknowledge that the decision to discipline Walters for attendance issues was made while she was on FMLA leave under circumstances at least permitting an inference that her legitimate leave was counted against her. Accordingly, the court did not err in allowing the jury to *consider* whether Walters' rights under the FMLA were interfered with in light of Mayo–Eau Claire's decision to issue her a written warning. At the very least, defendant has failed to identify a manifest error of law in doing so. *See also Lewis v. Sch.*

*Dist. # 70*, 523 F.3d 730, 743 (7th Cir.2008) (describing FMLA leave as "illusory" where defendant failed to account for that leave in terminating her employment for performance reasons); 29 C.F.R. § 825.220(c) ("Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies.").

As it did at summary judgment and during trial, Mayo–Eau Claire persists in asserting that the decision to discipline Walters was solely based on its attendance policy and entirely separate from the decision to grant FMLA leave. Certainly there is evidence in the record that would support this assertion, but as the court explained at summary judgment and the jury obviously found at trial, defendant's attempt to isolate those two decisions presented a question of fact: was it reasonable for Mayo Eau–Claire to hold Walters to an attendance policy requirement in light of her claim of an anxiety attack while at work that was part of her later approved FMLA leave? Indeed, the jury was instructed that "[d]efendant contends that its decision to discipline was unrelated to her right to leave, but rather for her failure (1) to clock in that day and (2) to provide notice to a supervisor before or shortly after leaving work on the 5th consistent with defendant's policies and procedures." (Closing Jury Instructions (dkt. # 213) 8–9.) In finding in favor of Walters on her FMLA interference claim, the jury necessarily rejected defendant's assertion that disciplinary action for failing to log in or provide her supervisor with notice of departure before or shortly after leaving could be untangled from the grant of FMLA leave. Thus, the court can find no error in allowing the jury to consider Walters' FMLA claim and—to the extent implicitly argued—again finds sufficient evidence to support the jury's verdict in favor of Walters.

Defendant also cites cases where courts have rejected an FMLA claim because there was no causal link between the FMLA leave and subsequent termination. (Def.'s Opening Br. (dkt. # 241) 8–10.) In contrast, the decision to discipline plaintiff here was made while she was on leave, and she received the written warning the day of her return. Essentially, there was *no* gap in time between that immediate discipline and her FMLA leave. Under those circumstances, the jury could reasonably have found that plaintiff did not receive the full benefit of the leave requested, having been disciplined for the sloppy way she began her leave, while in the throws of an undisputed anxiety attack. Perhaps this finding may not have been reasonable for an employee who had no credible work history, but defendant's decision to take disciplinary action over technical defects in logging in and out by an apparently outstanding, long-term employee on the day of a debilitating panic attack seem inexplicably petty, if not (as the jury found) motivated in part by her having taken FMLA leave. Finally, plaintiff presented direct evidence that this very disciplinary action *was* considered in her subsequent suspension and termination, thus providing support for the jury's conclusion that Mayo–Eau Claire relied on it in later suspending Walters and terminating her employment.

■ *Second,* and related to the first argument, defendant contends that Walters should not have been allowed to proceed with an interference claim, but rather should have been required to prove actual retaliation because she was disciplined or terminated after returning from FMLA leave. The court addressed the thrust of defendant's argument above. Walters was disciplined while on leave, and that action

triggered subsequent actions on the part of her employer. The Ninth Circuit's opinion in *Bachelder v. America West Airlines*, 259 F.3d 1112 (9th Cir.2001), illustrates this distinction in finding that a district court failed to properly analyze the plaintiff's claim as one for interference. In that case, there was no dispute that the plaintiff was terminated because of absences; the only question was whether those absences were FMLA-protected. *Id.* at 1125–26 ("[T]here is direct, undisputed evidence of the employer's motives: America West told Bachelder when it fired her that it based its decision on her sixteen absences.... If those absences were, in fact, covered by the Act, America West's consideration of those absences as a 'negative factor' in the firing decision violated the Act."). So, too, here. There is no dispute that Walters was disciplined · for leaving work without adequate notice. The only dispute was whether Mayo–Eau Claire's claim that it disciplined her for violating that attendance policy could be untangled from the fact that the leave itself was FMLA-approved.

Defendant points to language from this court's summary judgment opinion as support for its argument that plaintiff's claim is really one for retaliation. In that opinion, the court explained that whether defendant "interfered" with Walter's FMLA rights "turned on the reasonableness" of its interpretation of the attendance policies, consistent with the discussion above. (Def.'s Opening Br. (dkt. # 241) 12 (citing 2/11/14 Opinion & Order (dkt. # 104) 29).) From this, defendant infers that the court was injecting an issue of discriminatory intent into the claim. Far from it, the court used this language in describing the issue of fact left for the jury—whether the defendant reasonably pulled apart its grant of FMLA leave from the application of its attendance policy in disciplining Walters.

■ *Third*, Mayo–Eau Claire contends "it was a manifest error of law for the Court to allow [Walters] to attempt to prove interference under an FMLA notice theory where the adequacy of Walters' FMLA notice was *never* an issue for trial." (Def.'s Br. (dkt. # 241) 13.) The court allowed language about the notice requirement under the FMLA to be included in the jury instructions because Mayo–Eau Claire itself submitted into evidence the notice given under its attendance policy. (3/26/14 Trial Tr. (dkt. # 244) 12–16.) As such, defendant had placed the issue of whether Walters' notice was adequate into contention. (3/27/14 Trial Tr. (dkt. # 246) 2–3, 5–6.) The court finds no error in informing the jury that notice was required "as soon as practicable" to aid in their decision whether Mayo Eau–Claire had interfered with Walters' FMLA rights by issuing her a written warning for failing to give notice of leave on October 5, 2010.[1]

■ *Fourth*, defendant contends that the court erred in allowing Walters to argue "Mayo–Eau Claire interfered with her FMLA rights by giving her a written warning for failing to comply with its attendance policy that required Walters to notify her supervisor before walking off the job." (Def.'s Opening Br. (dkt. # 241) 16.) Mayo–Eau Claire's argument is largely duplicative of those made in support of the first three challenges, and already addressed by the court. It is undisputed that defendant had an attendance policy requiring an employee notify her supervisor as soon as possible when an absence is unexpected due to an emergency or sudden illness. In determining whether Mayo–Eau Claire interfered with Walters' FMLA rights, the jury necessari-

---

1. For the same reason, the court rejects defendant's request for a new trial under Rule 59(a) based on the inclusion of the notice requirement in the jury instructions.

ly had to consider whether Mayo–Eau Claire's application of the policy was reasonable or whether their discipline interfered with her rights under the FMLA. The court similarly rejects defendant's implicit argument that the jury erred in finding Walters not capable of providing notice either before or during her shift. (Def.'s Opening Br. (dkt. # 241) 19–20.) Although subject to argument, plaintiff advanced sufficient evidence for a reasonable jury to find that Walters could not have informed her supervisor of her immediate need to be absent before leaving the hospital.

█ Finally, defendant argues that plaintiff failed to prove she would not have been terminated but for the October 7th discipline notice. Despite characterizing this argument as one made pursuant to Rule 59(e), plaintiff does not identify any manifest error of law or new evidence. Instead, defendant's argument challenges the sufficiency of the evidence. Plaintiff presented evidence that the October 7th written warning was listed on documentation of subsequent disciplinary actions, as well as Walters' ultimate termination, providing a basis from which a reasonable jury *could* conclude that defendant relied on the written warning in terminating Walters.[2]

### C. Defendant's Rule 59(a) Motion for New Trial

█ Related to the last point, defendant alternately seeks a new trial based on the court's claimed error in using the "negative factor" language from 29 C.F.R. § 825.220(c) to instruct the jury, citing to the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). As an initial matter, defendant did not specifically object to the court's proposed jury instruction (to consider whether defendant interfered with her rights under the FMLA by "relying" on the October 7th written warning), other than by objecting generally to plaintiff's "building block" theory of FMLA liability. Defendant could and should have made its argument based on *Gross* at that time. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 410 (7th Cir.1999) ("Rule 59(e) may not be used to raise novel legal theories that a party had the ability to address in the first instance.").

Even if the court were to consider this argument, *Gross* does not provide the support defendant claims. In that decision, the Supreme Court held that the mixed-motive framework does not apply to ADEA claims because the language of that particular statute does not support such a framework. *See Smith v. Wilson*, 705 F.3d 674, 681 (7th Cir.2013). In contrast, the FMLA regulation at issue here contains the express language that the *Gross* Court counseled was necessary to allow for something other than "but for causation." *See Hunter v. Valley View Local Schools*, 579 F.3d 688, 692 (6th Cir.2009) (relying on "negative factor" language in 29 C.F.R. § 825.220(c) to hold that mixed motive framework applies to FMLA interference claims).

Accordingly, the court will deny defendant's motions under Federal Rule of Civil Procedure 59.

### II. Plaintiff's Motion for Attorneys' Fees and Costs

#### A. Standard of Review

█ Title 29 U.S.C. § 2617(a)(3) governs enforcement of FMLA claims and provides in pertinent part:

---

**2.** This was hardly an academic issue since whether or not this event constituted a third tardy or a second "no-show" was arguably crucial to Mayo–Eau Claire's right to terminate her under its own attendance policy. (2/11/14 Op. & Order (dkt. # 104) 4.)

The court in such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

See also *Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 610 (7th Cir.2014). "Unlike most other statutory fee-shifting provisions, section 2617 *requires* an award of attorneys' fees to the plaintiff when applicable. The award is not left to the discretion of the district court." *Franzen v. Ellis Corp.*, 543 F.3d 420, 430 (7th Cir. 2008).

▮▮▮ To determine reasonable attorneys' fees, courts generally use the "lodestar method" set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This approach "forms the 'centerpiece' of attorneys' fees determinations." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir.2011). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Id.* (citations omitted). The lodestar starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The party seeking the fee award must prove both the reasonableness of the hours worked and the hourly rates claimed. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir.1999) (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).

▮▮▮ Here, the jury found liability with respect to Walters' FMLA claim, but no liability with respect to her ADA claims. (Dkt. # 215.) As described in detail below, the bulk of defendant's objections to plaintiff's petition concern whether plaintiff adequately accounted for her mixed success. To determine the appropriate number of hours for the lodestar calculation, a district court should eliminate all hours spent on claims unrelated to the successful claims. *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933; *Lenard v. Argento*, 808 F.2d 1242, 1245–47 (7th Cir. 1987). Claims are not related if they are "distinctly different" from the successful claims and depend on "different facts and legal theories." *Ill. Welfare Rights Org. v. Miller*, 723 F.2d 564, 567 (7th Cir.1983); *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933. If, however, an unsuccessful claim is related to a successful claim by a "common core of facts" or depends on related legal theories, fees associated with that claim should not be excluded. *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645–46 (7th Cir.1995) (citing *Ill. Welfare Rights Org.*, 723 F.2d at 567). The court must focus on the overall results obtained to determine whether it should compensate the plaintiff for the hours spent on the related but unsuccessful claims. *Hensley*, 461 U.S. at 438–40, 103 S.Ct. 1933; *Spellan*, 59 F.3d at 645–46.[3]

## B. Plaintiff's Pending Motion to Compel

▮▮▮ Consistent with its general practice in cases where a dispute arises over the reasonableness of plaintiff's claimed fees and costs, the court required both parties to produce "all invoices from coun-

3. *Hensley* and the other cases cited concern fee petitions under 42 U.S.C. § 1988. Nonetheless, the court finds it appropriate to apply them here as well. *See Marez v. Saint–Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012) (applying *Hensley* factors in reviewing § 2617(a)(3) fee award and affirming award which reduced the lodestar amount by 50% to account for mixed success); *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 303 (4th Cir.2009) (considering *Hensley* factors in affirming district court's fee award for FMLA claim where plaintiff achieved a limited recovery but was successful on FMLA claim).

sel representing them in this matter, proof of payment, if any, and all time and costs records maintained by their respective law firms or an individual attorney." (5/7/14 Op. & Order (dkt. # 228) 17.) While the parties appear to have complied, plaintiff objects that defendant failed to submit its attorney's fees for the time spent defending against plaintiff's ERD proceeding, and moved to compel those documents as well. (Dkt. # 257.) This motion will be denied. First, the court finds defendant's production complied with the express terms of this court's order-providing the requested documentation "*in this matter.*" Defendant's time spent on the ERD proceeding is not material to deciding plaintiff's fee request. Second, the court did not need to review defendant's time entries at all in light of the nature of defendant's objections to the fee award. The purpose of this production generally is to aid the court in weighing any challenges to the reasonableness of hourly rates or the amount of time spent on various activities. As defendant's challenge here focuses on whether the categories of fees and costs requested are reasonable in light of plaintiff's mixed success in this case, rather than on the reasonableness of the rates charged or hours claimed for specific activities, the court will deny plaintiff's motion to compel.

## C. Plaintiff's Request

Plaintiff seeks an award of attorneys' fees in the amount of $484,862.00 under 29 U.S.C. § 2617(a)(3) and an award of billable costs of $18,002.65 under Federal Rule of Civil Procedure 54(d), as well as an award of other litigation expenses also under § 2617(a)(3). (Pl.'s Pet. (dkt. # 233); Bill of Cost (dkt. # 238).) In support of her petition and bill of cost, plaintiff submitted an affidavit of Attorney Carol Skin-

ner, which describes Attorney Reinhardt's and her backgrounds and experiences litigating employment cases, their respective hourly rates of $350 and $325 per hour, and efforts Attorney Skinner made to excise certain time from the billing records. (Affidavit of Carol Skinner ("Skinner Aff.") (dkt. # 235) ¶¶ 4, 6, 8, 11.) As to the latter, Attorney Skinner avers that she did not include time spent on (1) discussions with opposing counsel; (2) a failed effort to amend the complaint to include a hostile work environment claim; (3) expert witnesses who were not deposed or called to testify; and (4) the failed ADA accommodation claim. (*Id.* at ¶ 8.)

Attorney Skinner also attached billing records, detailing time spent on the case dating back to April 2012 for Attorney Skinner, her colleague Attorney Alison Boldt, and two legal/research assistants Cheryl Olson and Joy Montgomery. (Skinner Aff. (dkt. # 235) ¶ 2; *id.*, Ex. A (dkt. # 235-1).) These billing records reflect 1,284.03 hours of work and charges totaling $407,948.88. (*Id.*, Ex. A (dkt. # 235-1) p. 30.) Attorney Peter M. Reinhardt of Bakke Normal, S.C., joined the case in October 2013. Attorney Reinhardt's time entries for his paralegal, Linda Tylee, and him reflect 339.00 hours of work and charges totaling $102,537.50. (*Id.*, Ex. B (dkt. # 235-2).) The billing records of both law firms, therefore, support a claim for total fees in the amount of $510,486.38.

In addition to Attorney Skinner's affidavit, plaintiff submitted affidavits of other practitioners attesting that the rates sought by plaintiff for both the attorneys and legal assistants/paralegals are reasonable and consistent with or lower than the rates of other practitioners in medium to large cities in the Midwest, including Min-

neapolis/St. Paul and Madison.[4] (Declaration of Sheila Engelmeier (dkt. # 236) ¶¶ 5–7); (Declaration of Aaron N. Halstead (dkt. # 237) ¶ 13.)

As for plaintiff's request for reimbursement of costs under Rule 54(d) or 29 U.S.C. § 2617(a)(3), the billing records contain detailed litigation expenses with a total of $19,184.68. (*Id.*, Ex. A (dkt. # 235–1) pp. 30–38.) In addition, plaintiff's bill of costs seeks an award of $18,001.65, most of which represents invoices for printed or electronically recorded transcripts ($15,530.89). (Bill of Costs (dkt. # 238).)

### D. Defendant's Objections
#### i. Pre-suit ERD time

 Defendant objects to Walters including $29,592.50 in fees and costs relating to time spent on her claim before the Wisconsin ERD, because that claim concerned disability discrimination, not her successful FMLA claim. (Def.'s Opp'n (dkt. # 247) 8–9.)[5] In response, plaintiff argues that (1) the Wisconsin ERD does not have jurisdiction over an FMLA claim and, as such, plaintiff could not have asserted such a claim in the pre-suit proceeding; (2) the discovery collected during that proceeding was not duplicated in this action, but was used by both parties; and (3) time spent in preparing for the ERD proceeding—contacting witnesses, working with defense counsel on a protective order,

reviewing medical records, and communicating with Walters and defense counsel—were all necessary for plaintiff's assertion of FMLA claims in this litigation. Even crediting plaintiff's claim that counsel's work during the ERD proceeding related to her ultimately successful FMLA claim asserted in this action, the court will reduce the amount requested to account for the fact that the ERD proceeding concerned disability discrimination and, therefore, was more closely connected to the ADA claims on which plaintiff did not succeed. Accordingly, the court will reduce this portion of the fee request by 50%.

#### ii. Failure to Adequately Account for Claims Lost in this Litigation

Plaintiff's counsel Attorney Skinner represents that she excised certain categories of fees, including (1) "time spent on discussions with opposing counsel and related motion, briefs and affidavits to seek to amend pleadings to add a claim for hostile work environment, and research relating thereto;" (2) "all time spent regarding an expert witness who was ultimately not deposed or called as a witness;" and (3) "any entries specifically relating to accommodation issues." (5/28/14 Affidavit of Carol Skinner ("5/18/14 Skinner Aff.") (dkt. # 235) ¶ 8.) In addition to deleting time spent on those three categories, plaintiff's counsel also discounted the fee petition by 5% "to account for the fact that Plaintiff

---

**4.** As Attorney Skinner explains, there are very few attorneys in the Western District of Wisconsin, outside of Madison, who engage in employment litigation for plaintiffs-employees. (Skinner Aff. (dkt. # 235) ¶ 12.) As such, plaintiff relied on practitioners in Minneapolis/St. Paul and Madison to support the claim that the rates sought are reasonably market. While the hourly rates for a smaller market like Eau Claire may be lower than those accepted in Madison or the Twin Cities, the rates of plaintiff's counsel appear to fall within a reasonable range for lawyers of their

skill and experience. Regardless, defendant does not object to the requested rates.

**5.** Defendant does not argue that these fees are for time spent before the filing of this lawsuit. While the plain language of § 2617(a)(3) contemplates reimbursement for fees and expenses incurred in the "action," the court will, therefore, credit plaintiff's fee claim so far as discovery and other efforts engaged in during the ERD proceeding appear reasonably related to her successful FMLA claim.

did not receive all of the relief possible in this litigation." (*Id.* at ¶ 9.) Defendant contends that (1) plaintiff failed to actually excise all fees associated with the hostile work environment claim; and (2) the 5% reduction is wholly inadequate to account for plaintiff's mixed success.

■ As for the first objection, defendant points to at least seven additional time entries involving plaintiff's hostile work environment claim. It also argues that other time entries concerning written discovery and depositions touch on this withdrawn claim. The court credits plaintiff's explanation in a supplemental affidavit that some of the work overlapped with her other claims (*see* 6/30/14 Affidavit of Carol Skinner ("5/28/14 Skinner Aff.") (dkt. # 255) ¶ 12), and recognizes that it would be impossible, for example, to excise time spent in a deposition asking questions that arguably only relate to a hostile work environment claim. Accordingly, the court finds no basis to cut additional fees because they arguably were associated with an unsuccessful claim, though not exclusively so, but will further account for Walters' lack of success on a hostile work environment claim in its overall reduction described below.

■ As for the second objection, defendant contends that plaintiff's 5% discount on the remaining fee award does not adequately account for her mixed success, and suggests the court discount the award by 65%. The court agrees with both parties that further division of the hours expended on a claim-by-claim basis would be too difficult. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. While the court also agrees with defendant that the 5% reduction is too low, it further finds that Walters' unsuccessful ADA claims *were* interrelated with her successful FMLA claim because they shared "a common core of facts." *Jaffee v. Redmond,* 142 F.3d 409 (7th Cir. 1998). Indeed, while the two claims presented alternative explanations for defendant's disciplinary actions and plaintiff's ultimate termination, both revolved around a core of shared issues relating to plaintiff's medical issues and job performance. Accordingly, the court finds that a reduction of 25% will account for time spent on developing legal arguments that relate mainly, if not necessarily specifically, to the ADA claim and to gathering proof in support of her claim of damages for that claim.

This will result in a total award of reasonable attorney's fees in the amount of $375,466.66, as explained in the chart below:

| | |
|---|---|
| Total fees requested for ERD portion of case | $29,592.50 |
| Minus 50% reduction | $14,796.25 |
| Subtotal for ERD Fees | $14,796.25 |
| | |
| Total fees requested for remainder of case | $480,893.88 |
| Minus 25% reduction | $120,223.47 |
| Subtotal for Remainder of Fees | $360,670.41 |
| | |
| Total Award | $375,466.66 |

### E. Plaintiffs' Costs

Plaintiff also seeks two categories of costs: (i) $18,001.65 under Rule 54(d); and (ii) $19,184.68 under 29 U.S.C. § 2617(a)(3).

### i. Rule 54(d) Costs

"Rule 54(d) of the Federal Rules of Civil Procedure creates a strong presumption that the prevailing party will be awarded those costs of litigation identified in 28 U.S.C. § 1920." *Montanez v. Simon,* 755 F.3d 547, 557 (7th Cir.2014) (citing *U.S. Neurosurgical, Inc. v. City of Chi.,* 572 F.3d 325, 333 (7th Cir.2009)). "Recoverable costs include '[f]ees for ... transcripts necessarily obtained for use in the case,' § 1920(2), '[f]ees ... for printing,' § 1920(3), and 'the costs of making copies of any materials where the copies are necessarily obtained for use in the case,' § 1920(4)." *Montanez,* 755 F.3d at 557.

Plaintiff has submitted a bill of costs seeking reimbursement of (1) $350 in filing fees; (2) $15,530.89 in fees associated with transcripts; (3) $720.78 in witness fees; and (4) $1,400.08 in copy fees. (Dkt. # 238.) Defendant asserts two principal objections to this request.

First, consistent with its general objection to plaintiff's fee request, defendant contends that the court should exclude entirely certain costs, which it asserts solely concern plaintiff's failed ADA claims (*e.g.,* deposition transcript fees for defendants' depositions and witness fees for those witnesses testifying about Walters' emotional distress damages). For all other transcript fees, defendant contends the court should deduct 65% to reflect for her mixed success. Unlike in the attorney's fees context, there is *no* support for accounting for mixed success in awarding costs under Rule 54(d). To the contrary, the Seventh Circuit instructs the court to consider whether the costs were necessarily obtained for use in the case at the time the costs were incurred. *See, e.g., M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1410 (7th Cir.1991) ("[T]he determination of necessity must be made in light of facts known at the time of the deposi-

tion, and the introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition."). Even if such an accounting were required, most, if not every deposition, concerned at least some overlapping of liability or damages discovery for which the witness fee and much of the transcript fee would have been incurred.

Second, defendant challenges the adequacy of plaintiff's support for her claim to $1,400 in copy fees, and specifically the basis for the $.25 per page rate. In response, plaintiff acknowledges that while $.10 per page may be a reasonable charge for commercial photocopy services, plaintiff's counsel performs that service in house, and the $.25 rate is consistent with that charged by other law firms in Madison and other parts of Wisconsin, and further represents that the $.25 rate is what plaintiff's counsel charges all of its clients. While defendant points to some cases where district courts in the Seventh Circuit have limited the award of costs to a rate of $.15 per page, there is support for awarding copy costs at a rate of $.25 per page, *see, e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02 C 5893, 2014 WL 1097471, at *4 (N.D.Ill. Mar. 20, 2014) (awarding $184,235.82 in copy costs at $.25 per page rate). Given that plaintiff's counsel regularly changes its own clients at this higher rate, the court will allow it here.

### ii. 29 U.S.C. § 2617(a)(3) Costs

As quoted above, § 2617(a)(3) requires the court to award "other costs," which courts have interpreted to mean "reasonable out-of-pocket expenses," including "costs beyond those normally allowed under Fed.R.Civ.P. 54(d)." *Smith v. Diffee Ford–Lincoln–Mercury, Inc.,* 298 F.3d 955, 968–69 (10th Cir.2002) (analogizing the FMLA's remedial provision to that of

the Fair Labor Standards Act, 29 U.S.C. § 216(b)); *see also Franzen v. Ellis Corp.,* 543 F.3d 420, 425 (7th Cir.2008) (noting FMLA's comparison to FLSA).

██ In response to plaintiff's request under § 2617(a)(3), defendant lobs several objections. First, defendant objects to plaintiffs' inclusion of costs associated with counsel's travel, including a hotel stay and meals, and Walters' own travel to meet with her counsel. The court finds these costs fall within the reasonable out-of-pocket expenses incurred as part of this litigation, and will include these in its award. *See Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir.1997) (finding outlays for travel and related expenses are awardable expenses under the FLSA).

██ Second, defendant seeks reduction by 50% for those costs associated with Dr. Collier's deposition to account for plaintiff's mixed success. Defendant does not, however, argue that Dr. Collier's deposition would have been unnecessary if plaintiff had not pursued emotional distress damages as part of her ADA claim. As such, the total costs associated with travel to Phoenix and Dr. Collier's witness fee were all reasonably incurred in litigating plaintiff's FMLA claim.

██ Third, defendant objects to a $192.82 hotel expense for Walters. Defendant interprets the expense as a two-night expense (June 6–7, 2013) proceeding a one-day meeting (June 5, 2013). The court does not interpret the expense recording that way. Rather, it appears that the hotel expense was incurred on June 5, 2016, and covered a two day meeting with counsel from June 6–7, 2013. This expense also appears to be reasonably related to this litigation.

██ Fourth, defendant objects to all expenses associated with Walters' therapist and expert witness Margo Hecker (identified as "First Things First" on the expense reports) because Hecker's role was limited to Walters' claim for emotional distress damages as part of her ADA claim. The court does not view Hecker's role as narrowly as defendant. As described above, Hecker's testimony also concerned plaintiff's ability to return to work, which factored into the appropriate remedy under the FMLA. Still, the court credits defendant's objection that much of Hecker's testimony related to Walters' failed ADA claim. Accordingly, it will reduce the $4,050.75 in costs associated with Hecker by 25%.

As a result of these rulings, the court will award $18,048.06 in costs under 29 U.S.C. § 2617(a)(3).[6]

### III. Plaintiff's Motion to Set Aside the Stipulation and Grant Alternative Equitable Relief

In a recently-filed motion, plaintiff Walters seeks an order from the court setting aside that portion of the judgment awarding reinstatement despite her electing this very relief. Instead, she now asks for an award of front pay damages. (Dkt. # 261.) As defendant points out and plaintiff cautiously acknowledges in her reply, Rule 60 governs plaintiff's motion. While the court retains jurisdiction to consider defendant's post-judgment motion and plaintiff's motion for attorney's fees, neither motion affects the finality of the court's original judgment. (Dkt. # 232.) Nor does the fact that this *portion* of the final judgment was based on a joint stipulation of the parties upend Rule 60's application. *See Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d

**6.** Defendant identified a duplicative entry of $123.93, which plaintiff acknowledges in her reply and has been deducted from the total award reflected above.

867 (1992) ("There is no suggestion in these cases that a consent decree is not subject to Rule 60(b).").

Rule 60(b) sets forth a number of bases for relief, the only one applicable is the last: "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). While this language suggests a broad catch all, the Seventh Circuit cautions that "[r]elief under this provision is an 'extraordinary remedy' and should be granted only in 'exceptional circumstances.'" *Banks v. Chi. Bd. of Educ.*, 750 F.3d 663, 668 (7th Cir.2014) (quoting *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir.2009)); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) ("extraordinary circumstances" are required to justify reopening of a judgment under Rule 60(b)(6)). Plaintiff Walters' motion falls far short of this standard.

### A. Background [7]

Plaintiff offered Walters a 0.8 FTE supervisory position at a Mayo facility in Menomonie, Wisconsin, also referred to as the Red Cedar Clinic. The stipulation of the parties allowed Mayo–Eau Claire to wait until after post-verdict motions and any appeals were resolved before reinstating Walters. At Walters' request, however, Mayo–Eau Claire agreed to look for an immediate position. Even though the Menomonie position was listed as a full-time position, defendant also adjusted it to meet Walters' needs. Moreover, for the first three months, Walters was to work 20 hours per week (or as a 0.5 FTE)—another concession to Walters to ease her transition back to work.

As part of her reinstatement, Walters was required to submit a pre-employment drug test and physical, complete a background disclosure, and agree to a background check. Because she asked to start as soon as possible, Walters was permitted to resume work on June 9, 2014, attending a nursing orientation that day for all new hires and re-hires, which was held at her prior workplace in Eau Claire, Wisconsin.[8] Walters reported to work at the Red Cedar Clinic the following week.

On or about June 25, 2014, Walters was informed that her drug test result was positive for methamphetamine. At the request of Mayo's Medical Review Officer Dr. Lockheart, Walters brought in her medications for his review. Dr. Lockheart concluded that her medication accounted for two of the three positive drug test results, but not for the third—the positive test for methamphetamine. During conversations with Dr. Lockheart, Walters informed him that the week before the drug test, she had taken the maximum dose of pseudoephedrine for several days for a cold. Walters was also prescribed Adderall. Mayo–Eau Claire consulted with three other Medical Review Officers, one of whom contacted the scientist at the testing facility. All agreed that neither Adderall nor pseudoephedrine could cause the positive test result.

On at least June 23 and again on July 31, 2014, Walters met with Stacie Schmidt, Senior H.R. Service Partner, to make sure

---

7. Although neither side submitted formal findings of facts on this motion, the following summary is taken from the basic facts set forth in defendant's response to the motion which was not disputed in plaintiff's reply, or from plaintiff's own summary of the facts. This summary also appears to be consistent with the affidavits provided by both parties.

8. Because Walters originally informed HR that she would be out of state between June 2 and June 9, 2014, she was scheduled for orientation on the next available date of June 23, 2014. When Walters then advised that she would be returning early, Red Cedar Clinic moved her to the June 9 orientation at the last minute to allow for an earlier start date.

all was going well for her and to discuss any accommodations Walters may need. When asked if she needed anything, Walters advised that she did not. Walters also informed Schmidt that things were going well with her supervisor. Despite this, Walters was a no show at work on July 23. She was also absent the previous day due to an anxiety attack, although she had texted her supervisor to inform her of that absence.

On July 31, Mayo–Eau Claire also received a report from a toxicologist, Dr. Beth Baker, who Red Cedar Clinic had retained as a consultant. Dr. Baker concluded that neither Adderall nor pseudoephedrine could have caused the positive drug test and that the most likely cause was plaintiff's use of methamphetamines.

The next day, on August 1, 2014, Walters was placed on paid administrative leave pending completion of the workplace investigation into the positive drug test. Schmidt informed Walters of this decision in a phone call and followed up with a letter. During that conversation, Walters raised for the first time the possibility that the positive drug test was due to exposure to methamphetamines from caring for her niece's daughter, including laundering clothing and other items. (Walters' niece allegedly was involved in manufacturing methamphetamines.)

Walters also sought her own review of the drug test results from Dr. Richard Tovar. In a report dated August 14, 2014, which was provided to defendant's counsel, Tovar described Walters' exposure to methamphetamine by "wash[ing] bags of clothing, stuffed animals, blankets and pillows from the home where meth was present and possibly cooked." (Declaration of Richard Tovar ("Tovar Decl."), Ex. B (dkt. # 281–2) 1.) Based on this, Tovar concluded that Walters' "close proximity to the

methamphetamine more likely than not, resulted in an unintentional exposure, resulting in a positive drug screen result." (*Id.* at 2.)

On August 11, 2014, plaintiff's counsel contacted defendant's counsel and informed him that Walters was having difficulty scheduling an appointment with Mayo's behavioral health department. Mayo obtained two prompt appointments for Walters to see a psychiatrist, neither of which Walters attended.

At some point, Walters requested intermittent FMLA leave due to anxiety and depression. She began continuous FMLA leave on August 18, 2014. Walters' FMLA leave expired on November 18, 2014, but Mayo continued her on administrative leave until the end of the year.

While on FMLA leave, the parties agreed Walters could seek alternative employment once she was stabilized emotionally. Walters secured a casual nursing position at Marshfield Clinic in Eau Claire, Wisconsin, which started on November 5, 2014. The position pays significantly less than her position at Mayo–Eau Claire, offers no benefits, and involves greatly reduced hours, guaranteeing only two days per month.

When informed of Walters' new employment, Red Cedar Clinic closed the investigation into Walters' positive drug test result based on an understanding that Walters would be ending her employment at the conclusion of 2014. Counsel for the parties dispute whether Walters actually resigned on December 31, 2014, and if so, whether this was done by agreement or under duress, but defendant's counsel represents that as of January 26, 2015, "Mayo–Eau Claire has taken no action regarding Walters' job status." (Def.'s Pro-

posed Sur–Reply (dkt. # 286–1) 6.) [9]

### B. Analysis

In support of her motion, Walters contends that the contemplated attempt at reinstatement was unsuccessful, despite her good faith effort. Plaintiff attributes this failure to: (1) defendant's requirement that she submit to a drug test; (2) defendant's reliance on the positive drug screen to place plaintiff on administrative leave; (3) defendant's delay in securing an employee badge and health insurance card; and (4) difficulty in scheduling an appointment with a Mayo psychiatrist to secure new prescription medications. Even if these were contributing factors, none warrant equitable relief from the judgment, whether viewed individually or together.

First, Walters takes issue with having to submit to a drug test for new employees, given that she was not a new employee. Mayo–Eau Claire explains that the drug test is mandatory for both new employees and re-hires. While it may have been arguable whether Walters's "reinstatement" equated to a "re-hire," there is no evidence in the record that Mayo–Eau Claire acted in bad faith in equating the two. Indeed, Walters was went through the basic orientation that a newly employed or re-employed hire would generally, consistent with the fact that she had last worked for Mayo some three years before. Finally, whatever misgivings Walters now claims to have had about being required to take a drug test, there is no dispute that she agreed to do so as part of her reinstatement, just as she agreed to complete the other standard requirements of new or re-hired employees in order to expedite her reinstatement.[10]

Second, and the focus of Walters' motion, Mayo Eau–Claire relied on the positive drug screen result to place her on administrative leave. As an initial matter, Mayo Eau–Claire had at least four individuals review the test results, all of whom concluded that neither Adderall nor pseudoephedrine—Walters' original explanations for the test results—could have resulted in a positive screen. While Walters later offered another explanation and bolstered that explanation with a toxicologist report, Mayo–Eau Claire took reasonable steps in both investigating the positive test results and placing Walters on administrative leave pending the results of that investigation. While the court is sympathetic to Walters' decision to secure alternative employment while on leave, this was her decision to accept a new position, effectively walking away from her employment with Mayo–Eau Claire.

Walters further points out that the policy states that *existing* employees who test positive are "generally issued a written warning for the first offense." (Affidavit of Amy J. Walters (dkt. # 266) ¶ 33.) Here, however, the test was administered as part of Walters' rehiring process. Moreover, Schmidt avers that "[v]iolations of the policy are reviewed on a case-by-case basis" and that "[t]ermination is specifically addressed as disciplinary action appropriate for violating the policy." (Declaration of Stacie Schmidt (dkt. # 270) ¶ 57.)

Third, Walters complains of the delay in obtaining her employee badge and health

---

9. The court will grant defendant's motion to file this sur-reply in part and considered it only with respect to new matters raised in plaintiff's reply.

10. Sadly, as plaintiff's counsel points out, Walters may well have agreed to take the test because she was confident the result would not be positive for illicit drug use. That she was mistaken, however, is not Mayo–Eau Claire's fault.

insurance cards. With respect to the employee badge, HR Director Stacie Schmidt credibly explained that Walters did not receive an employee badge at the June 9th orientation because of her last-minute switch to that session from the later June 23rd one. Walters did receive her badge on June 19th, and can point to no harm by not receiving it earlier—she was manually clocked in by her manager and paid for the hours worked and did not need the badge to perform tasks on her computer or for any supervisory responsibilities. Since Mayo–Eau Claire offers a reasonable basis for the delay, and Walters fails to explain how she was harmed by the lack of a badge for ten days, this is no basis for undoing the parties agreement to proceed with reinstatement.

As for the delay in enrolling for health insurance and obtaining health insurance cards, Schmidt explains that she learned of Walters' issues with registration on June 24 and sought assistance from Mayo's office in Rochester. When Walters reported that she continued to have difficulty with insurance benefits on or about July 21, Schmidt again contacted Rochester and learned that Walters had successfully signed up for benefits. Schmidt then advised Walters that the insurance cards take approximately two to four weeks to issue, but that she could print temporary ones from the website. Walters again fails to identify a specific harm from this delay. Accordingly, the court finds that the response to Walters' difficulty in obtaining health insurance cards was reasonable, and certainly no basis for concluding that

Mayo–Eau Claire was attempting to sabotage Walters' reinstatement.[11]

Fourth, Walters complains about delays in arranging for her to be seen by a Mayo psychiatrist, and as a result, in obtaining prescriptions for medications necessary for her mental health. As an initial matter, this complaint conflates Mayo Eau-Claire's role as her employer with that of her medical service provider. While the parties' dispute centers on whether Walters was an established or new patient, this dispute is immaterial. There is no dispute that once Mayo–Eau Claire learned of Walters' difficulty in securing an appointment, the legal department arranged for two prompt appointments, neither of which Walters accepted. This simply provides no basis to find that Mayo–Eau Claire acted in bad faith as her employer (or violated the parties' stipulation) by denying or delaying Walters' access to health care, including mental health care.

■■■ Certainly, the planned reinstatement was not a success,[12] but Walters has failed to demonstrate the kind of "extraordinary circumstances" necessary to disrupt the final judgment here, either by showing that defendant failed to meet its obligations under the stipulation to work with plaintiff to acclimate and train her for a return to work, or that defendant otherwise acted in bad faith in reinstating Walters' employment. To the contrary, the undisputed record demonstrates that defendant took appropriate steps to reinstate Walters. The court further finds that Mayo–Eau Claire acted reasonably in placing Walters on administrative leave pending a further investigation of the positive

11. Walters also complains that her name was not on the patient care orientation on June 30, 2014, but there is no basis for finding harm to Walters because of this oversight—she avers that she remained and simply wrote her name on the roster—nor does this suggest bad faith on the part of defendant.

12. As indicated, there is a dispute between the parties as to her current job status, but that dispute is not before the court in plaintiff's motion to set aside stipulation and grant alternative equitable relief.

drug test results. That the investigation ended with a whimper rather than a bang is not grounds to allow plaintiff to revisit the remedy she selected at the end of trial. Accordingly, the court will deny plaintiff's Rule 60(b) motion.

## ORDER

IT IS ORDERED that:

(1) plaintiff Amy J. Walters' motion for attorney fees and costs (dkt. # 233) is GRANTED IN PART AND DE-NIED IN PART as set forth above;

(2) plaintiff is awarded $393,514.72 in attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3);

(3) plaintiff's bill of costs (dkt. # 238) is GRANTED and plaintiff is awarded $19,184.68 in taxable costs pursuant to Federal Rule of Civil Procedure 54(d);

(4) defendant Mayo Clinic Health System–Eau Claire Hospital, Inc.'s motion to alter or amend judgment or for new trial (dkt. # 240) is DE-NIED;

(5) plaintiff's motion to compel or show cause (dkt. # 257) is DENIED;

(6) plaintiff's motion to set aside stipulation and grant alternative equitable relief (dkt. # 261) is DENIED;

(7) defendant's motion to file a sur-reply (dkt. # 286) is GRANTED IN PART AND DENIED IN PART as set forth in this opinion; and

(8) the clerk of court is directed to amend the judgment to provide an award of attorney's fees and costs as described above in ¶¶ 2 and 3.